ARTHUR BLUE *v.* CARL ROBINSON, WARDEN,
CONNECTICUT CORRECTIONAL INSTITUTION

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

---

Argued March 2—decision released August 9, 1977

*Charles D. Gill,* public defender, with whom, on the brief, was *James D. Cosgrove,* chief public defender, for the appellant (plaintiff).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Michael Dearington,* assistant state's attorney, for the appellee (defendant).

HOUSE, C. J.  This is an appeal from the denial by the Superior Court in Hartford County of a writ of habeas corpus which was sought in making a

collateral attack upon a judgment of the Superior Court in New Haven County which, on February 15, 1974, imposed a prison sentence on the petitioner, Arthur Blue, following his plea of guilty to one count of a five-count information. The count to which the guilty plea was entered and on which judgment was rendered charged Blue with attempted murder in violation of §§ 53a-49 and 53a-54 (a) (1) of the General Statutes.

In this situation of a collateral attack on the judgment rather than an appeal from it, we are faced with an unusually complicated factual situation in which the only finding before us is that of the court which denied the writ of habeas corpus, and we do not have the benefit of any finding from the trial court which rendered the judgment which is subjected to the collateral attack. In this situation, a rather lengthy summary of the circumstances is necessary. Since in the original proceedings the petitioner was the defendant, to minimize confusion we will hereafter at all times refer to Blue as the defendant.

On January 17, 1974, the defendant, who was represented by private counsel, Joseph A. Licari, Jr., was presented in the Superior Court in New Haven County for trial on a five-count information to which he had previously pleaded not guilty, electing to be tried by a jury of six. The record on this appeal does not disclose the specific charges contained in counts two, three, four and five (which were subsequently nolled), but it does disclose what transpired on January 17, 1974, when the case was reached for trial. The assistant state's attorney, John J. Kelly, indicated that he had been informed

by the defendant's counsel that the defendant intended to change his plea to the first count of the five-count information filed against him. The clerk of the court then asked the defendant if he wished to change his plea to the information charging him with attempted murder, to which he had previously pleaded not guilty on October 24, 1973. The defendant indicated that it was his desire to change his plea. Thereupon the clerk of the court stated to the defendant in open court: "This is the information: John T. Redway, Assistant State's Attorney for the County of New Haven, accuses Arthur Blue of attempted murder and charges that at the city of New Haven, on or about September 4, 1973, the said Arthur Blue, *with intent to cause the death of another person, to wit: Officer Lawrence Klein, did attempt to cause the death of such person,* in violation of Sections 53a-49 and 53a-54 (a) (1) of the Connecticut General Statutes. To this information, sir, how do you at this time plead?" (Emphasis added.) To this inquiry the defendant answered "Guilty." At the direction of the court, the assistant state's attorney then stated the facts of the offense as they appeared in his file on the case and what action he proposed to take upon a change in the plea.[1] The trial court then asked a series of

---

[1] "Mr. Kelly: It would be the state's claim, your honor, on September 4, 1973, at about 10 p.m., Security Officer Lawrence Klein of the Yale-New Haven security force received a complaint from a woman who stated there was a male attempting to enter parked cars in the parking lot at Park Street at South Frontage Road here in the city. The officer proceeded to a particular vehicle, a white Ford Mustang, and he observed this accused, Arthur Blue, lying across the front seat with his hands underneath the dash. At this point the accused exited the vehicle and threw a pair of pliers and a screwdriver into his trouser pocket and thereupon began to walk away. The officer identified himself and ordered this individual to halt. However, this accused fled on foot into the parking lot. A chase took place involving this accused and Officer Klein. Sub-

questions of the defendant designed to ascertain that the plea of guilty was being offered by the defendant voluntarily and knowingly.[2] The court then accepted the guilty plea and continued the case for sentencing upon receipt of a report from the probation department as a result of its presentence investigation.

---

sequently this accused produced a revolver and fired one shot at Officer Klein which missed and he continued to flee. Subsequently, two other Yale Security Officers, Dennis M. McKiernan and Peter Forster, gave chase. This accused pointed a revolver in their direction, pulled the trigger twice, but it misfired. Subsequently he was apprehended and advised of his constitutional rights. And he stated to the officers among other things that he had been in the automobile trying to steal it in order to go to New York to get heroin. He bought the gun from two youngsters three days prior to his apprehension for $10.00.

The Court: Is there any agreement with the state's attorney's office? Any recommended sentence if the plea is accepted?

Mr. Kelly: No. The record should reflect the following. There were pretrial negotiations in this matter between, first, Mr. Licari and assistant state's attorney John Redway of our office and subsequently with me. What will occur in this matter should the plea be accepted is it will be submitted to the sentencing judge on the basis of no agreed recommendation as to the one count, the first count where this accused has entered a plea of guilty. However, the state will request the court to impose a term of not less than eight nor more than sixteen years in the Connecticut state's prison to be served. It is not an agreed recommendation. This is the state's request. The remaining counts of the information will be nolled on the day of sentencing. And this accused currently has pending in the Sixth Circuit Court and Seventh Circuit Court informations in those circuit courts charging him with forgery. The state will recommend to those circuit courts as part of its disposition of these matters that those matters be disposed of by a nolle in those courts."

[2] "The Court: Mr. Blue, did you understand what Mr. Kelly has been talking about here?

Mr. Blue: Yes, your honor.

The Court: How old are you?

Mr. Blue: Twenty-six.

The Court: You have had counsel since your arrest; you have been represented by Mr. Licari?

Mr. Blue: Yes.

The Court: And he has told you of the possible penalties and

On February 15, 1974, the defendant was presented in the Superior Court for sentencing by the same judge before whom he had previously personally entered his plea of guilty to the charge that "with intent to cause the death of another person, to wit: Officer Lawrence Klein, did attempt to cause the death of such person." His counsel made a

discussed with you the nature of the charges against you?

Mr. Blue: Yes.

The Court: And are you satisfied with the advice and assistance that he has given you in this matter?

Mr. Blue: Yes.

The Court: You understand what the charge is against you, that you are pleading to?

Mr. Blue: Yes.

The Court: And the state's attorney, you heard him briefly indicate what was in his file with respect to this matter, is that essentially what happened in this matter?

Mr. Blue: Yes, that is what happened.

The Court: This plea, is this of your own free will? Is this voluntary? Is anybody forcing you to plead guilty?

Mr. Blue: No.

The Court: It is voluntary?

Mr. Blue: Yes.

The Court: And you understand that the state has agreed to nolle the other charges. But there is no agreed recommendation as to what sentence might be imposed upon you, you understand that?

Mr. Blue: Yes.

The Court: You understand that the sentencing judge — do you understand what I just said?

Mr. Blue: Yes.

The Court: Do you understand the sentencing judge has to use his best judgment and he need not accept any suggestion or recommendation that the state's attorney may make, either from your lawyer or the state's attorney, but will use his best judgment as to what sentence to impose, you understand that?

Mr. Blue: Yes.

The Court: And in view of everything we have just said now, you wish to plead guilty to this particular count, is that right?

Mr. Blue: Yes.

The Court: All right, the court will find the plea was made voluntarily with full knowledge of the charge and of the possible penalties and after the advice of counsel, and the plea will be accepted."

strong plea for a minimum sentence, stating to the court that the defendant had "never any intention in his mind to actually commit any harm in any way" and also that neither counsel nor the defendant thought they would have been able to prevail if the case had gone to trial. There was no suggestion that the defendant wished to withdraw his previously entered guilty plea or that there were any difficulties or misunderstandings over the plea bargain which had been made with the state's attorney.

In the course of his comments in imposing sentence, the trial court stated: "It's difficult to judge what was in Mr. Blue's mind at the time this had happened. I take him at his word that he didn't intend to hurt anybody or he didn't intend to kill anyone in that sense. But in the course of committing another crime, he was armed with a deadly weapon and fired it at a police officer, which in itself is a serious offense." The court then imposed a sentence of from six to twelve years, indicating that Blue's extensive prior criminal record and his inability to solve his drug problem necessitated a serious penalty. This was a lesser penalty than the state's attorney's office had recommended.

The record discloses that in addition to the entry of a nolle on the other four counts of the information, at the time of sentence the state agreed to nolle four "check" counts pending against the defendant in two Circuit Courts when those charges were received and that at the time sentence was imposed the defendant was served by the clerk of the court with notice of his right to appeal from the court's judgment.

The defendant took no appeal from the judgment but, instead, in November, 1974, through new coun-

sel instituted habeas corpus proceedings in the Superior Court in Hartford County collaterally attacking the earlier judgment of the Superior Court in New Haven County, claiming that his incarceration pursuant to that earlier judgment was illegal. It is from the judgment rendered by the Superior Court in Hartford County denying his petition for the writ of habeas corpus that the defendant has brought the present appeal. In these circumstances, it is the pleadings and proceedings in the habeas corpus matter which must first engage our attention to ascertain the merit of the defendant's assignments of error addressed to the judgment of the court denying the writ.

In his petition as amended, the defendant alleged that his confinement was illegal for two specific reasons. The first was that in accepting as voluntary his plea of guilty "the Court failed to advise the Petitioner of (a) his right to a jury trial, (b) his right against self-incrimination, and (c) his right to confront all witnesses against him." It is his claim that "[s]aid failure to satisfy the Constitutional requirements imposed on the Trial Court in insuring the voluntariness of any Guilty Pleas, rendered the Petitioner's purported Guilty Plea involuntary and therefore invalid as a matter of law on its face."

His second claim was more complicated and difficult to comprehend. In brief, it was predicated primarily on a claim that his trial counsel was incompetent in not controverting the state's claim that when the two Yale security officers chased him he pointed a revolver in their direction and pulled the trigger twice but it misfired. He alleged that a report to this effect by an investigating detective

"on its face lacks credibility," that "by reasonable inquiry, said Attorney should have been able to eliminate the counts of attempted murder against two of the Officers, the purported likelihood of which was judged to be great by said attorney, caused Petitioner to change his not guilty plea on the first count involving Officer Klein, from whom he was fleeing after an unsuccessful attempt at auto theft." His claim then further alleged: "Petitioner thus could have established a lack of intent on the said first count, which would have been necessary for the State to have proven beyond a reasonable doubt a charge of attempted murder." We find it particularly difficult to follow this reasoning in view of the fact that it appears that the counts involving charges of attempting to shoot the two Yale security officers were nolled and the sole charge to which the defendant pleaded guilty and on which he was sentenced involved an earlier shooting when by his own admission in open court the defendant agreed that what happened was that he had "produced a revolver and fired one shot at Officer Klein which missed."

In any event, these were the allegations of the defendant's petition which he summarized in conclusion: "On the basis of the foregoing, the Petitioner respectfully submits that said Attorney was incompetent, thus violating Petitioner's Constitutional Right to have competent counsel representing him, and thus his plea was involuntary, and that as a matter of law Petitioner's plea was also involuntary in that sentencing Judge who accepted said plea of guilty, failed to inquire sufficiently of the Petitioner with respect to the voluntariness of his plea to satisfy the requirements of the Due Process Guarantee of the United States Constitution."

Our recital of the allegations of the defendant's petition clearly indicates that regardless of their merits they were claims which could properly have been raised on a direct appeal in which, if error were found, the case could have been remanded to the trial court for a new trial.[3] It would appear that by proceeding in an independent habeas corpus action the defendant hoped to retain the benefits of his plea bargain for nolles on eight other charges against him while securing by habeas corpus his release from service of the sentence imposed on the count to which he pleaded guilty.

We find no error in the judgment of the trial court denying the defendant's petition.

In the first place, the trial court should correctly have denied the petition without reaching the merits of the defendant's federal constitutional claims in the absence of allegation and proof that the defendant did not deliberately bypass the orderly procedure of a direct appeal. The petition contained no allegation whatsoever concerning the defendant's failure to appeal from the judgment of the Superior Court in New Haven County. As we stated in *Vena* v. *Warden*, 154 Conn. 363, 366, 225 A.2d 802, "we reiterate our adherence to our policy which has allowed federal constitutional claims arising out of state court convictions to be presented and determined in our courts. This policy is supported by *Fay* v. *Noia* [372 U.S. 391, 435, 83 S. Ct. 822, 9 L. Ed. 2d 837] so far as it relates the circumstances under which a prisoner, who has not appealed his

---

[3] We have not overlooked the suggestion in *State* v. *Barber*, 173 Conn. 153, 154, 376 A.2d 1108, that when a bona fide claim of the denial of adequate assistance of counsel is asserted good cause may be established for proceeding by way of habeas corpus rather than by direct appeal.

conviction, can still have his federal constitutional claims considered on habeas corpus. We hold, therefore, that a petitioner may collaterally raise federal constitutional claims in a habeas corpus proceeding even though he has failed to appeal his federal constitutional claims directly to us if he alleges and proves, by a fair preponderance of the evidence, facts which will establish that he did not deliberately bypass the orderly procedure of a direct appeal. To be more precise, he must both allege in his petition and prove at the habeas corpus hearing that he did not 'after consultation with competent counsel or otherwise, understandingly and knowingly . . . [forego] the privilege of seeking to vindicate his federal claims' by a direct appeal to this court. *Fay* v. *Noia,* supra, 439. The burden of alleging and proving such facts is rightfully on the petitioner. *Nash* v. *United States,* 342 F.2d 366, 368 (5th Cir.). The determination whether a prisoner has deliberately bypassed the orderly procedure of an appeal must be made from the facts in each case. *Fay* v. *Noia,* supra, 440; see *Townsend* v. *Sain,* 372 U.S. 293, 312, 83 S. Ct. 745, 9 L. Ed. 2d 770. Unless such a procedure as that herein laid down is followed, the way is left open for any long-term prisoner deliberately to defer his habeas corpus action until the requisite evidence for a conviction has disappeared, so that, if his habeas corpus is successful, he is necessarily released regardless of the evidence which was originally available to the state to prove his guilt." See also *Collins* v. *York,* 159 Conn. 150, 154–55, 267 A.2d 668. Here the defendant's petition contained no allegation whatsoever concerning his failure to appeal his conviction and, as we have noted, at the time of sentencing he was formally given notice of his right to appeal.

While what we have already said is dispositive of the present appeal, in view of the fact that the trial court overlooked the deficiency of the petition and proceeded to determine the lack of merit of the habeas corpus petition, we have decided to review that decision in the hope that the matter in controversy will be put to rest.

At the start of our discussion, two significant matters should be noted. The first is that by electing to proceed by a habeas corpus action rather than by appeal the defendant assumed the burden of proof that his plea of guilty was not voluntarily and intelligently entered. *LaReau* v. *Warden,* 161 Conn. 303, 306, 288 A.2d 54. The second matter of significance is related. Nowhere in the defendant's petition is it alleged (nor does it anywhere appear that there was any evidence presented) that the defendant did not in fact know what his constitutional rights were when he pleaded or that he had not been fully informed of them by his private counsel who had represented him at the time of his plea and sentencing and whom he did not call as a witness. On this aspect of his appeal, the defendant has relied entirely on an assertion that "the Court failed to advise the Petitioner" of these rights—not that he was unaware of them.

The defendant's allegation that his guilty plea was involuntary because his trial counsel was incompetent requires no extended comment. The trial court made an express finding that "[t]he Petitioner was represented throughout the proceedings against him by competent counsel, Mr. Licari." This finding has not been attacked and is conclusive of this allegation made by the defendant.

The remaining ground for the petition appears to be two-pronged. The first is specifically that "the Court failed to advise the Petitioner" of his constitutional rights and that this "failure" rendered the guilty plea involuntary. The other, appearing on the basis of earlier recitals contained in the petition, is the broader claim that the court in accepting the guilty plea "failed to inquire sufficiently of the Petitioner with respect to the voluntariness of his plea to satisfy the requirements of the Due Process Guarantee of the United States Constitution." Although not specifically delineated in this latter claim, the defendant has briefed as part of it an assertion that his plea was involuntary because the court in accepting the plea did not inquire of the defendant if he had intended to murder Officer Klein when he fired one shot at him "which missed."

With agreement by the state, "[i]n order to expedite consideration of the issue before the court on the merits," two paragraphs of the defendant's draft finding are added to the finding. These are (1) that the presiding judge did not explain to the defendant that he had certain constitutional rights which he would waive by a plea of guilty: the right to a trial by jury, the privilege against compulsory self-incrimination, and the right to confront his accusers; and (2) that the presiding judge did not ask the petitioner if in fact he had intended to murder anyone on the date of September 4, 1973. The basic questions at issue on the merits of the appeal are, therefore, whether the guilty plea was invalid because the trial court did not expressly warn the defendant that the plea entailed a waiver of his constitutional privilege against compulsory self-incrimination, his right to a trial by jury and his right to confront his accusers, and whether it

also erred in accepting the guilty plea without asking the defendant if he had intended to cause the death of Officer Klein when he shot at him on September 4, 1973.

The rule has been long established that a court should not accept a guilty plea which was not voluntarily and intelligently entered. In *Boykin* v. *Alabama,* 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274, the United States Supreme Court in reiterating the established rule mandated the additional element that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily. See *Consiglio* v. *Warden,* 160 Conn. 151, 162, 276 A.2d 773. While the *Boykin* case did not specify what the record must "show," it did observe (p. 243) that it could not presume "from a silent record" a waiver of the federal constitutional rights involved and, therefore, the record should disclose "an affirmative showing" that the guilty plea was intelligent and voluntary. In *McCarthy* v. *United States,* 394 U.S. 459, 464–65, 89 S. Ct. 1166, 22 L. Ed. 2d 418, in construing rule 11 of the federal rules of criminal procedure, the Supreme Court had indicated that where the federal rule applied the court should in addition to inquiring into the defendant's understanding of the nature of the charge and the consequences of his plea satisfy itself that there was a factual basis for the plea. It was in response to the holding in the *Boykin* case and to assure a sufficient record that new rules of criminal procedure were adopted by the Superior Court in 1976 at a time subsequent to the entry of the defendant's plea. These rules (Practice Book §§ 2122—2124) now include the requirement that the judicial authority shall not accept a plea of guilty without first addressing the

defendant personally and determining that he fully understands the constitutional rights which are waived by a plea of guilty and that there is a factual basis for the plea.[4]

It is also of some significance in the present case to note that we have consistently followed the rule that " 'once entered, a guilty plea cannot be withdrawn except by leave of the court, within its sound discretion, and a denial thereof is reversible only if it appears that there has been an abuse of discretion'; *Szarwak* v. *Warden,* 167 Conn. 10, 23, 355 A.2d 49; and that '[t]he burden is always on the defendant to show a plausible reason for the withdrawal of a plea of guilty.' " *State* v. *Battle,* 170 Conn. 469, 475–76, 365 A.2d 1100.

Before the adoption of the new rules in 1976—two and a half years after the acceptance of the defendant's plea in the present case—there was no requirement that the court itself address the defendant in order to be sure to have a record as well as to assure itself that the defendant understood, inter alia, the various constitutional rights which are waived by a plea of guilty and that the plea was intelligent and voluntary. The defendant's reliance

[4] "[Practice Book] Sec. 2122. ADVICE TO DEFENDANT The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he fully understands: . . . (5) The fact that he has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he has the right to be tried by a jury or a judge and that at that trial he has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself."

"[Practice Book] Sec. 2124. FACTUAL BASIS The judicial authority shall not accept a plea of guilty unless he is satisfied that there is a factual basis for the plea."

on the decisions in the *Boykin* case and on the later case of *Henderson* v. *Morgan,* 426 U.S. 637, 96 S. Ct. 2253, 49 L. Ed. 2d 108, as requiring at the time he was sentenced a judicial inquiry by a ritualistic litany is misplaced. Most significantly, in the *Boykin* case it appears that no questions whatsoever were asked of the accused concerning his guilty plea. In contradistinction to the "silent record" in *Boykin,* the record in the present case discloses an extensive inquiry by the trial court before the guilty plea was accepted. See footnotes 1 and 2, supra. In the *Henderson* case, there was an express finding that the defendant, who had an unusually low mental capacity, was not advised by either counsel or the court that intent to cause death was an essential element of the crime of second degree murder and a further finding that the charge of second degree murder was in fact never formally made, noting that (p. 645) "[h]ad it been made, it necessarily would have included a charge that respondent's assault was 'committed with a design to effect the death of the person killed.'" In the present case, the full charge of attempted murder was read to the accused in open court before the judge who pronounced sentence. It included the express allegation that the accused acted "with intent to cause the death" of Officer Klein and it was to this charge that the defendant personally responded with his plea of guilty. It was also before the same sentencing judge that the defendant expressly agreed with the state's attorney's statement that "this accused produced a revolver and fired one shot *at* Officer Klein *which missed.*"[5] (Emphasis added.) As the court also observed in the *Henderson* case (p. 647): "[I]t

---

[5] Webster's Third New International Dictionary: "miss: to fail to hit something (took three shots and missed each time)."

may be appropriate to presume that in most cases
defense counsel routinely explain the nature of the
offense in sufficient detail to give the accused notice
of what he is being asked to admit." [6]  Unlike the
"silent record" in *Boykin,* in the present case there
is a full record that the court accepted the plea after
inquiry and an express finding that it "was made
voluntarily with full knowledge of the charge and
of the possible penalties and after the advice of
counsel." (See foonote 2, supra.)

During the sentencing proceedings, the state's
attorney made reference to what happened after the
defendant had shot at Officer Klein and was then
being pursued by that officer and two Yale security
officers.  The state's attorney noted that the defend-
ant had "raised his right hand, pointed the revolver
in the direction of the officers and pulled the trigger
two times.  The weapon fortunately had apparently
misfired; and, the subject was thereupon disarmed,
subdued and arrested."  It should be remembered
that charges arising from this incident were being
nolled.  After the state's attorney had completed his
remarks, counsel for the defendant during his plea
for a minimum sentence informed the court that the
defendant had told him that "he really never pointed
it at the policeman or security guard.  That there
was never any intention in his mind to actually
commit any harm in any way."  After stating to the
court these comments of his client, defense counsel
continued:  "The plea bargaining at least with
respect to the plea, because I thought Mr. Blue had

[6] To the same effect, we noted in *Williams* v. *Reincke,* 157 Conn.
143, 148, 249 A.2d 252, and reaffirmed in *LaReau* v. *Warden,* 161
Conn. 303, 309, 288 A.2d 54, that "[t]he presence of counsel at the
time when the plea of guilty was entered militates strongly against
a conclusion that the plea was involuntary."

a better chance of getting a fair sentence by presenting the facts to the court at sentencing, neither Mr. Blue nor I felt that this was the kind of case where he could prevail if it were tried. If it were tried, I don't think he would have had the opportunity to ask for the sentence I will be asking for here this morning." He concluded his plea with the statement: "We don't contest the facts of what happened except that Mr. Blue admits firing one shot. He does deny he ever attempted to do harm to anyone, your Honor." It was immediately thereafter that in response to the court's inquiry as to whether the defendant wished to add anything to his counsel's statement the defendant responded: "No, Mr. Licari said pretty much what I wanted to say. I never misfired the gun. Like the two police officers, they came down on me, they came with their revolvers drawn. I just surrendered. That is the way I see it." It was at this point that the court made its observation that it was difficult to judge what was in the defendant's mind and that he would "take him at his word that he didn't intend to hurt anybody or he didn't intend to kill anyone in that sense." Were it not for the context in which these statements were made and the defendant's own prior admissions to the court and his own plea of guilty to shooting "with intent to cause the death" of Officer Klein, it might appear that sentence was imposed upon a mistaken set of facts. In the context of the remarks, however, it is clear that this was not the case. The defendant in his statement did not disavow his admission that he had shot at Officer Klein and missed or his plea that he had done so with intent to cause that officer's death, and there was no request to withdraw the guilty plea or suggestion of any desire to do so.

Were further discussion necessary, what this court recently said in *State* v. *Battle,* 170 Conn. 469, 474, 365 A.2d 1100, is apt: "A guilty plea is not invalid simply because it is motivated by the defendant's desire to accept the certainty or possibility of a lesser penalty, rather than face the possibility of a greater penalty after trial. *Brady* v. *United States,* 397 U.S. 742, 751, 90 S. Ct. 1463, 25 L. Ed. 2d 747; *LaReau* v. *Warden,* 161 Conn. 303, 309, 288 A.2d 54. As pointed out in *North Carolina* v. *Alford,* 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162, 'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' "

As the court further stated in the *Alford* case (p. 37), "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." In this case, it appears that when the defendant was presented for trial the state had strong evidence of guilt, the defendant in open court admitted that he had shot at Officer Klein and missed, before sentence was imposed it was expressly represented to the sentencing court that neither the defendant nor his counsel believed that the defendant could prevail if the case were tried, and counsel informed the court that in his opinion if the case were tried the defendant would not "have had the opportunity to ask for the sentence I will be asking for here this morning." The situation falls squarely within that noted in the *Alford* case.

In the light of all these circumstances, we find no merit whatsoever in the defendant's present appeal

and in his claims that the Superior Court erred in concluding that he had not proved that he was illegally confined and in rendering judgment denying his petition for the writ of habeas corpus.

There is no error.

In this opinion LOISELLE and LONGO, Js., concurred.

SPEZIALE, J. (concurring in part and dissenting in part). I concur in the result because I agree that "the trial court should correctly have denied the petition without reaching the merits of the defendant's federal constitutional claims in the absence of allegation and proof that the defendant did not deliberately bypass the orderly procedure of a direct appeal." (Majority opinion, p. 369.) I agree that this conclusion should be dispositive of the appeal.

I strongly disagree, however, with the majority's discussion of the merits of the appeal. Two *separate* determinations must be made in assessing the validity of a guilty plea: (1) Was there a valid waiver of several constitutional rights, and (2) did the defendant possess an understanding of the law (including all the elements of the offense) in relation to the facts. See *McCarthy* v. *United States,* 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L. Ed. 2d 418. These are entirely distinct determinations, and if either is negative the plea cannot stand.

With regard to the first determination, "[i]n order for a plea of guilty to withstand appellate *or* postconviction review, the *record* must *affirmatively disclose* that the defendant entered such a plea voluntarily and intelligently. *Boykin* v. *Alabama,* 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274; *State* v. *Bugbee,* 161 Conn. 531, 533, 290 A.2d 332."

(Emphasis added.) *State* v. *Battle,* 170 Conn. 469, 473, 365 A.2d 1100. The majority's opinion cites *LaReau* v. *Warden,* 161 Conn. 303, 288 A.2d 54, but *LaReau* was expressly before the leading case of *Boykin* v. *Alabama,* supra, and this court declined to apply *Boykin* retroactively. Id., 307. The issue on the merits is not, as stated in the majority's opinion, whether the "guilty plea was invalid because the trial court did not expressly warn the defendant" of the rights he was waiving. The issue is whether the mandate of *Boykin* has been met—there is *no* mention *anywhere* in the record (and the majority opinion refers to none) of the constitutional rights waived by the defendant when he entered his guilty plea. These rights are not even summarily referred to by the defendant, counsel, *or* the court. The record is empty. Neither we nor the United States Supreme Court can "presume a waiver of these three important federal rights [the privilege against self-incrimination, the right to a jury trial, and the right of confrontation] from a silent record." *Boykin* v. *Alabama,* supra, 243. The United States Supreme Court has just recently stressed again that the "strict" standard to be applied in determining the question of waiver is a "matter of federal constitutional law." *Brewer* v. *Williams,* 430 U.S. 387, 97 S. Ct. 1232, 1242, 51 L. Ed. 2d 424. The state must prove " 'an intentional relinquishment or abandonment of a known right or privilege.' *Johnson* v. *Zerbst* [304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461]." The record of a guilty plea must *affirmatively* reflect this valid waiver of constitutional rights, according to *Boykin.* The majority opinion finds significant the fact that the defendant does not assert that he was unaware of his constitutional rights, but *Boykin* itself was a case involving a peti-

tioner who had "never at any time alleged that his guilty plea was involuntary or made without knowledge of the consequences." *Boykin* v. *Alabama* (Harlan, J., dissenting), supra, 245. Again, in the present case, there is not a single word in the record about the constitutional rights which the defendant was waiving. Clearly there has been no affirmative disclosure of a waiver, nor are we constitutionally permitted to presume such a waiver.

If the record is silent regarding any discussion of waiver of rights, then the mandate of *Boykin* has not been met; and we need not even reach the issue of whether the defendant understood the law and the elements of the offense in relation to the facts of his case. This *second* and *distinct* determination is the one discussed in *Henderson* v. *Morgan,* 426 U.S. 637, 96 S. Ct. 2253, 49 L. Ed. 2d 108. The majority states that the defendant mistakenly seeks a judicial inquiry by ritualistic litany at the time of sentencing. The "totality of circumstances — ritualistic litany" language appears in dicta in *Henderson* only with respect to an explanation of the elements of the charge against the accused. The record just does not support the conclusion that the defendant understood the nature of the charge against him, especially the fact that he was pleading guilty to a crime involving the *intent* to cause the death of another person.[1] Furthermore, the record

---

[1] The record of the sentencing proceeding reflects both the court's virtual admission that the defendant lacked the requisite intent to cause the death of either Officer Klein *or* anyone else, and the fact that sentence was indeed imposed on a mistaken set of facts, contrary to the majority's assertion. First, the defendant through his counsel disclaimed any intent to cause death: "He was there attempting to take a car. And when the policeman or security guard approached, he fled. . . . [H]e doesn't feel or he tells me that he never meant to harm anyone. . . . He tells me he really never pointed

reflects an absence of any explanation of the charge, and the court's remarks at sentencing virtually amount to a judicial finding that the defendant lacked the requisite intent. Absent such intent, the defendant may have been guilty of a lesser offense, but not of attempted murder; in fact, the trial court apparently was convinced that the defendant had committed another crime when it stated: "But in the course of committing another crime, he was armed with a deadly weapon and fired it at a police officer, which in itself is a serious offense." The majority places heavy reliance on *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162. This cannot be a *North Carolina* v. *Alford* situation unless there is before the judge "strong evidence of actual guilt." Id., 37. On the contrary, in the present case the defendant through his counsel claimed that the crucial element of intent was lacking and the judge agreed.

In summary, (1) the record contains no mention at all of constitutional rights, let alone an affirmative disclosure of a constitutionally valid waiver thereof, and (2) the record does not indicate that the defendant understood the law and the elements of the offense with which he was charged—rather, it reflects an absence of the crucial element of intent.

it *at* the policeman or security guard. That there was never any intention in his mind to actually commit any harm in any way. . . . [I]t is not really an attempted murder case." (Emphasis added.)

This protestation of innocence does not stand alone. It must be read with the court's admission that "I take him at his word that he didn't intend to hurt anybody or he didn't intend to kill anyone in that sense." This necessarily means that the court did *not* determine that there was "strong evidence of actual guilt" of attempted murder (which requires intent to cause death).

The defendant's failure to disavow the shooting itself is irrelevant; it does not carry with it an admission of intent to cause death, which intent was found lacking by the court.

It is clear that sentence was imposed by the trial court upon a mistaken set of facts. In my opinion, the proceedings were contrary to the spirit of the cases discussed, the entry of the plea was invalid, and sentence should not have been imposed.

BOGDANSKI, J. (concurring in part and dissenting in part). I concur in the result but disagree with the majority on the issue of the defendant's alleged waiver of his constitutional rights.

As my colleague, *Speziale, J.,* has pointed out in his opinion, the issue is not whether the guilty plea was invalid because the trial court did not expressly warn the defendant of the rights he was waiving. Rather, the issue is whether there is any mention anywhere in the record of the constitutional rights waived by the defendant when he entered his guilty plea.

Nowhere are those constitutional rights even summarily mentioned by defense counsel, the state's attorney or the court. The record is empty of any such reference. This court cannot presume from such a silent record a waiver of those three important constitutional rights: the privilege against self-incrimination, the right to a jury trial, and the right of confrontation. *Boykin* v. *Alabama,* 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274; *State* v. *Battle,* 170 Conn. 469, 473, 365 A.2d 1100. In order for a plea of guilty to withstand appellate review, the record must affirmatively disclose a waiver of those rights. That affirmative showing is wholly lacking in this case.