******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* DAVID D. ROBERTS
# (SC 21061)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

The defendant appealed, on the granting of certification, from the judgment of the Appellate Court, which had affirmed his conviction, on pleas of guilty, of reckless endangerment in the second degree, threatening in the first degree, and intimidation based on bigotry or bias in the third degree. The defendant claimed that the Appellate Court had improperly upheld the trial court's denial of his motion to withdraw his pleas because, during the plea canvass, the trial court did not specifically ask him whether he was knowingly and voluntarily waiving his constitutional rights to a jury trial, to confront his accusers, and against self-incrimination, which he claimed was required by *Boykin* v. *Alabama* (395 U.S. 238). *Held*:

The Appellate Court properly upheld the trial court's denial of the defendant's motion to withdraw his pleas, as the plea canvass of the defendant in this case was constitutionally adequate, even though it presented a very close question and was contrary to best practices.

*Boykin* requires only that the record affirmatively disclose that a defendant has entered his plea knowingly and voluntarily for the plea to be constitutionally valid, and there is no requirement that a plea canvass include enumeration of each of the three constitutional rights identified in *Boykin*.

Moreover, in order to determine whether a defendant's guilty plea was knowing and voluntary, a reviewing court must consider the totality of the circumstances surrounding the plea canvass, and, under the totality of the circumstances of the present case, the plea canvass of the defendant was constitutionally adequate.

Specifically, during the plea canvass, the defendant confirmed that counsel had explained to him the rights that he was waiving by pleading guilty, that he had been afforded enough time to speak with counsel about his decision to plead guilty, and that he was satisfied with counsel's representation, all of which were sufficient to demonstrate the defendant's understanding of the consequences of his guilty pleas and the waiver of his constitutional rights, thus rendering his pleas knowing and voluntary.

Moreover, defense counsel was present during the canvass and stated that he was not aware of any reason that the trial court should not accept the guilty pleas, and the trial court mentioned the defendant's voluntary waiver of his right to a trial, alluded to the defendant's right against self-incrimination, and presented the defendant with the option to either enter pleas or to proceed to trial in an exchange that indicated that the defendant was aware of his right to a trial and affirmatively chose to continue in his decision to plead guilty.

Nevertheless, the plea canvass in the present case lay at the outermost boundary of what *Boykin* permits, and the best practice to ensure a defendant's understanding of the consequences of his guilty plea is for the trial court to address the defendant personally and, pursuant to the rule of practice (§ 39-19 (5)) governing the acceptance of pleas and advice to the defendant, to inquire into the defendant's understanding of the rights enumerated in Practice Book § 39-19 (5), including the rights to a jury trial, confrontation, and against self-incrimination.

(*Two justices concurring separately in one opinion*)

Argued December 3, 2025—officially released April 28, 2026

*Procedural History*

Substitute information charging the defendant with the crimes of reckless endangerment in the second degree, threatening in the first degree, and intimidation based on bigotry or bias in the third degree, brought to the Superior Court in the judicial district of New Britain, geographical area number fifteen, where the defendant was presented to the court, *Keegan, J.*, on pleas of guilty; thereafter, the court, *Keegan, J.*, denied the defendant's motion to withdraw his pleas and rendered judgment of guilty in accordance with the pleas, from which the defendant appealed to the Appellate Court, *Alvord, Suarez* and *Westbrook, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Adele V. Patterson*, with whom, on the brief, was *Michael W. Brown*, for the appellant (defendant).

*Rocco A. Chiarenza*, senior assistant state's attorney, with whom, on the brief, were *Christian M. Watson*, state's attorney, and *Alison Kubas* and *Danielle Koch*, assistant state's attorneys, for the appellee (state).

*Opinion*

DANNEHY, J. The sole issue in this certified appeal is whether under *Boykin* v. *Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), the trial court conducted a constitutionally adequate canvass of the defendant, David D. Roberts, when accepting his guilty

pleas. The defendant claims that the Appellate Court incorrectly upheld the trial court's denial of his motion to withdraw his pleas because, during its canvass, the court did not specifically ask him whether he was knowingly and voluntarily waiving three federal constitutional rights: the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers. We affirm the Appellate Court's judgment.

The following facts, as detailed by the prosecutor in setting forth the factual basis underlying the pleas, and procedural history are relevant to our resolution of this appeal. In 2020, the defendant went to his neighbor's house with a shotgun to confront a group of individuals who had rented that house through Airbnb. The defendant cocked and aimed his shotgun at the renters, referred to them using racial slurs, and told them to "get the F out of here . . . ." The defendant then called his neighbor, who owned the house, and left voicemails, stating in summary, "that he was going to bring the N-words and Puerto Ricans down, and that the owner of the residence was f-ed, and that the war was on if he found out that there would be more people of color renting at that residence."

The defendant was arrested and charged in two separate cases. In the first case involving the renters, the state originally charged the defendant with reckless endangerment in the second degree in violation of General Statutes § 53a-64, threatening in the second degree in violation of General Statutes § 53a-62, and breach of the peace in the second degree in violation of General Statutes § 53a-181. In the second case involving his neighbor, the state charged the defendant with intimidation based on bigotry or bias in the third degree in violation of General Statutes (Rev. to 2019) § 53a-181*l*, and harassment in the second degree in violation of General Statutes (Rev. to 2019) § 53a-183.

On January 14, 2022, the defendant appeared with counsel before the court to plead guilty to certain charges in both cases under an agreement with the state. The

defendant pleaded guilty under the *Alford*[1] doctrine to reckless endangerment in the second degree and threatening in the first degree in violation of General Statutes §53a-61aa, and he entered a straight guilty plea to intimidation based on bigotry or bias in the third degree. The defendant pleaded guilty to all three charges in connection with the first case, and the state nolled the charges in the second case. In exchange for the defendant's pleas, the state agreed to a sentence of six years of incarceration, execution suspended after one year, and three years of probation, and the defendant retained the right to argue for a term of incarceration as short as six months. The following discussion occurred during the plea canvass:

"The Court: Okay. So, what they're going to do is, they're going to change that guilty plea on the intimidation in the third degree to the original file, everything that happened with the renters. So, with that factual understanding, what is your plea, guilty or not guilty?

"The Defendant: Guilty.

"The Court: All right, I'm going to ask you questions now about the plea. Any question you don't understand, or [if] you need to speak to your attorney, please let me know. . . .

"All right, sir. Have you had enough time to speak with your lawyer about your case and your decision to plead guilty to the intimidation charge, and guilty under the *Alford* doctrine to the charges of reckless endangerment and threatening in the first degree?

"The Defendant: Guilty.

"The Court: Do you understand?

"The Defendant: Yes.

"The Court: My question is do you understand? Have you had enough time?

"The Defendant: Yes.

---

[1] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

"The Court: All right. And did you review with your attorney all the facts that led to your arrest on all three of those charges?

"The Defendant: Yes.

"The Court: And you understand the day we're talking about, that these charges led to, right?

"The Defendant: Yes.

"The Court: All right. Now, did your attorney go through with you the elements of each crime, what the state has to prove in order for someone to be found guilty of that crime?

"The Defendant: Yes.

"The Court: And do you understand how the facts recited by the prosecutor support, they meet the legal burden for each of those crimes?

"The Defendant: Yes.

"The Court: With respect to the intimidation, you do admit your guilt upon that charge, correct?

"The Defendant: Yes.

"The Court: And with respect to the other two charges, you don't agree with all the factual bas[es], but you do not want to take this to trial. You do understand that the state has sufficient evidence to prosecute you, and, therefore, you want to enter into a plea agreement, is that fair to say?

"The Defendant: Yes.

"The Court: Is that the reason you're entering your plea under the *Alford* doctrine?

"The Defendant: Yes.

"The Court: *Thank you. Did your attorney explain to you all the constitutional rights that you give up today because of your plea?*

"The Defendant: Yes.

"The Court: All right, and did anyone force you in any way to cause you to enter your pleas today?

"The Defendant: No.

"The Court: Are you doing so voluntarily?

"The Defendant: Yes.

"The Court: And did you take anything today that interferes with your ability to understand what you're doing in court?

"The Defendant: No.

"The Court: Are you satisfied with your lawyer's representation of you?

"The Defendant: Yes.

* * *

"The Court: All right. All right, once I accept your pleas, sir, you will not be able to take them back unless you have a valid, legal reason to do so. So, you need to be sure today that this is how you want to resolve . . . your case. Are you sure about that?

"The Defendant: Yes.

"The Court: All right. . . . Either attorney know of any reason the court should not accept the pleas?

"[The Prosecutor]: No, Your Honor.

"[Defense Counsel]: No, Your Honor. Thank you.

"The Court: The court will accept the pleas, find them knowingly and voluntarily made with the assistance of competent counsel. There is a factual basis, plea is accepted. Findings of guilty may enter." (Emphasis added.)

Prior to sentencing, the defendant, through substitute defense counsel, moved to withdraw his guilty pleas. He argued that the trial court's plea canvass was defective because the court did not obtain an affirmative

acknowledgment from the defendant that he was knowingly and voluntarily waiving his rights not to incriminate himself, to a jury trial, and to confront his accusers. Defense counsel argued that the plea canvass was too general, that "there needs to be a canvass on the specific bundle of rights that a defendant is waiving," and that the defendant's acknowledgement that "his attorney had discussed with him the constitutional rights that he was waiving" did not suffice. The prosecutor responded that, although the trial court did not specifically confirm that the defendant had waived the three constitutional rights, its canvass was constitutionally adequate under *Boykin* v. *Alabama*, supra, 395 U.S. 243. The trial court denied the defendant's motion and later sentenced the defendant to six years of incarceration, execution suspended after nine months, followed by three years of probation.

The Appellate Court affirmed the judgment of the trial court. See *State* v. *Roberts*, 227 Conn. App. 159, 188, 320 A.3d 989 (2024). It held that *Boykin* "does not require any specific canvass, or talismanic words, but rather holds only that the court cannot presume a waiver of [the] three important federal rights *from a silent record*." (Emphasis in original; internal quotation marks omitted.) Id., 175. It reasoned that the record was not silent as to whether the defendant voluntarily and knowingly pleaded guilty, as the trial court extensively questioned the defendant as to the consequences of his pleas. Id., 175–76. The court concluded that the trial court's plea canvass established that the defendant's pleas were made knowingly, voluntarily, and intelligently "[b]ecause the record reflects that the defendant had a full understanding of what his guilty plea[s] meant and because he affirmed during the plea canvass that his attorney [had] explained to him the constitutional consequences of his guilty plea[s] . . . ." Id., 176. This certified appeal followed.[2]

"It is well established that [t]he burden is always on the defendant to show a plausible reason for the withdrawal

[2]To clarify the scope of the defendant's claim before us, both *Boykin* and Practice Book § 39-19 impose requirements that a trial court must follow when conducting a plea canvass. In his briefs and at oral argument

of a plea of guilty. . . . To warrant consideration, the defendant must allege and provide facts which justify permitting him to withdraw his plea . . . ." (Internal quotation marks omitted.) *State* v. *Simpson*, 329 Conn. 820, 836, 189 A.3d 1215 (2018). A defendant has met his burden of justifying the withdrawal of his guilty plea if the record fails to affirmatively disclose that he voluntarily and intelligently made his plea in compliance with *Boykin* v. *Alabama*, supra, 395 U.S. 243. See, e.g., *State* v. *Godek*, 182 Conn. 353, 356, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981).

"In order for a plea of guilty to be constitutionally valid, the record must affirmatively disclose that the defendant entered the plea voluntarily and intelligently." (Internal quotation marks omitted.) *State* v. *Suggs*, 194 Conn. 223, 226, 478 A.2d 1008 (1984), citing *Boykin* v. *Alabama*, supra, 395 U.S. 242; see also *Brady* v. *United States*, 397 U.S. 742, 747–48 n.4, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970) (*Boykin* requires that record "affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily"). In setting forth this rule in *Boykin*, the United States Supreme Court specifically identified three federal constitutional rights that are waived by a plea of guilty: "First, is the privilege against compulsory self-incrimination guaranteed by the [f]ifth [a]mendment and applicable to the [s]tates by reason of the [f]ourteenth [amendment]. . . . Second, is the right to trial by jury. . . . Third, is the right to confront one's accusers." (Citations omitted.) *Boykin* v. *Alabama*, supra, 243. A reviewing court "cannot presume a waiver of these three important federal rights from a silent record." Id.; see also *State* v. *Domian*, 235 Conn. 679, 686–87, 668 A.2d 1333 (1996).

before this court, the defendant has based his claim solely on the constitutional requirements of a plea canvass as outlined by *Boykin.* He has not briefed and does not advance any separate claim that the trial court violated the plea canvass provisions of Practice Book § 39-19, and when questioned at oral argument regarding § 39-19, his counsel expressly disavowed independent reliance on that Practice Book provision. We therefore treat the defendant's claim as a constitutional claim founded solely on *Boykin*.

The federal courts of appeals directly addressing the issue have held that *Boykin* does not mandate an express advisement during a plea canvass of each constitutional right waived or separate waivers as to each. See, e.*g.*, *Layne* v. *Moore*, 90 Fed. Appx. 418, 423 (3d Cir. 2004); *Fontaine* v. *United States*, 526 F.2d 514, 516 (6th Cir. 1975), cert. denied, 424 U.S. 973, 96 S. Ct. 1476, 47 L. Ed. 2d 743 (1976); *United States* v. *Sherman*, 474 F.2d 303, 305 (9th Cir. 1973); *Stinson* v. *Turner*, 473 F.2d 913, 915–16 (10th Cir. 1973); *Wade* v. *Coiner*, 468 F.2d 1059, 1060–61 (4th Cir. 1972); *United States* v. *Frontero*, 452 F.2d 406, 415 (5th Cir. 1971). "*Boykin* imposed only that requirement of an affirmative record showing of a voluntary and intelligent plea. The remainder of the opinion does expressly discuss the three enumerated constitutional rights. . . . [H]owever . . . these rights were set out to demonstrate the gravity of the trial court's responsibility, but . . . no procedural requirement was imposed that they be enumerated." *Stinson* v. *Turner*, supra, 915. Thus, federal courts have held that "a failure to advise a defendant of the right to trial by jury, right of confrontation, and right against self-incrimination does not in itself render the plea involuntary"; *Van Poyck* v. *Wainwright*, 595 F.2d 1083, 1085–86 (5th Cir. 1979); and "the failure to specifically articulate the *Boykin* rights does not carry the day for the defendant . . . ." *United States* v. *Stewart*, 977 F.2d 81, 85 (3d Cir. 1992), cert. denied, 507 U.S. 979, 113 S. Ct. 1433, 122 L. Ed. 2d 800 (1993). Instead of a narrow focus on whether the plea canvass included an enumeration of specific constitutional rights, federal courts examine whether the record, as a whole, established that a defendant's plea was knowing and voluntary. See, e.g., *Layne* v. *Moore*, supra, 422–23; *Stinson* v. *Turner*, supra, 915–16.

Consistent with this federal precedent, this court has never held that, to be constitutionally adequate, a trial court's plea canvass must expressly enumerate each of the three constitutional rights mentioned in *Boykin* and obtain a separate, on-the-record waiver as to each of the so-called *Boykin* rights. Instead, this court has

considered the totality of the circumstances surrounding the plea canvass in order to determine whether the defendant's guilty plea was knowing and voluntary. See, e.g., *State* v. *Carter*, 243 Conn. 392, 398, 703 A.2d 763 (1997) (in considering whether plea canvass is constitutionally adequate, this court's "focus is directed at all of the relevant circumstances surrounding the canvass" (internal quotation marks omitted)); *State* v. *Badgett*, 200 Conn. 412, 419, 512 A.2d 160 (in evaluating constitutional adequacy of plea canvass, court considered fact that, prior to entering guilty plea, defendant initially had elected jury trial, at which time "the defendant must have been advised of his right to a trial by either the court or a jury"), cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986).

Although we conclude that, considered under the totality of the circumstances, the plea canvass in present case was constitutionally adequate, it presents a very close question. At the outset of the canvass, the trial court instructed the defendant, "[a]ny question you don't understand, or [if] you need to speak to your attorney, please let me know." The court then asked the defendant whether his attorney had explained to him the constitutional rights that he was giving up by pleading guilty, to which the defendant simply responded, "[y]es." Without more, we would conclude that the court's mere confirmation that the defendant had conferred with his attorney regarding the consequences of his guilty pleas would be insufficient to establish that the plea canvass was constitutionally adequate. The defendant's response confirms only that his attorney explained the waiver of his rights to him, not that he *understood* that explanation or the specific rights he was surrendering.

The record, however, reflects several additional facts that, although not overwhelming, on balance support the inference that the defendant's consultation with defense counsel regarding his guilty pleas was sufficient to confirm his understanding of the consequences of his guilty pleas, thus rendering them knowing and voluntary. For

instance, the court asked the defendant whether he had been allowed enough time to speak to his attorney about his decision to plead guilty and whether he was satisfied with his attorney's representation. The defendant's affirmative responses to both of those questions suggest that he was satisfied with his attorney's explanation of the consequences of his guilty pleas, including the waiver of his constitutional rights. Additionally, defense counsel was present during the canvass and, when questioned by the court, stated that he was not aware of any reason that the court should not accept the guilty pleas. If defense counsel had any concerns regarding the defendant's ability to understand the constitutional rights that counsel had explained to him, he was obligated to disclose those concerns to the court. He expressed no such concerns.

Defense counsel's presence at the colloquy, even when accompanied by evidence suggesting that counsel has adequately advised a defendant of the constitutional consequences of pleading guilty, is merely one factor to consider and is not dispositive of whether a plea canvass is constitutionally adequate. See, e.g., *State* v. *Badgett*, supra, 200 Conn. 420 (upholding plea based in part on adequate representation by defense counsel); *State* v. *Godek*, supra, 182 Conn. 361 (relying in part on defendant's prior consultation with defense counsel to uphold guilty plea). In the present case, the fact that defense counsel did not provide the court with any reason that the court should not accept the pleas, together with the defendant's acknowledgement that he had sufficient time to discuss the pleas with counsel and that he was satisfied with his representation, supports the conclusion that the defendant understood counsel's explanation of the constitutional rights he was waiving by pleading guilty.

Moreover, during its canvass, the court mentioned the defendant's voluntary waiver of his right to trial and alluded to his right against self-incrimination. Specifically, the court expressed its understanding that, although the defendant was pleading guilty to reckless endangerment in the second degree and threatening in the first degree under the *Alford* doctrine, he was

nonetheless pleading guilty because he did "not want to take this to trial. You do understand that the state has sufficient evidence to prosecute you, and, therefore, you want to enter into a plea agreement, is that fair to say?" The defendant responded, "[y]es." This exchange reveals that the trial court informed the defendant that, by pleading guilty, he was choosing not to take his case to trial. Thus, the defendant was aware of his right to trial and affirmatively chose to continue in his decision to plead guilty.

With respect to the defendant's right against self-incrimination, the trial court informed him that, "once I accept your pleas, sir, you will not be able to take them back unless you have a valid, legal reason to do so. . . . [Y]ou need to be sure today that this is how you want to resolve . . . [the] case. *Are you sure about that*?" (Emphasis added.) The defendant responded, "[y]es." Although imprecise, the substance of this exchange must be considered in conjunction with the court's earlier inquiry regarding whether the defendant was pleading guilty because he did not want to proceed to trial. It is significant that, in the course of that exchange, the court expressly inquired of and obtained confirmation from the defendant that he was not being forced to plead guilty and, instead, was entering his pleas voluntarily. Given that previous exchange, the court's additional inquiry as to whether the defendant was "sure" that he wanted to "resolve" his case by pleading guilty sufficiently explained to the defendant that he had a choice and was not being forced to plead guilty. The court presented the defendant with an option—enter a plea and resolve the case, or, as previously referenced, take the case to trial. By making clear to the defendant that it was his choice whether to plead guilty, the court's canvass was sufficient to inform the defendant of the effect of his waiver of his right against self-incrimination. Specifically, we previously have explained that, "[i]n connection with the waiver of the defendant's right against self-incrimination, the federal constitution requires only that a defendant, at the time of the entry of a plea

of guilty or nolo contendere, be informed by the court that . . . he could not be compelled to enter that plea." (Internal quotation marks omitted.) *State* v. *Carter*, supra, 243 Conn. 397–98.

Even when viewed within the totality of the circumstances, the skeletal canvass in the present case skirts close to constitutional inadequacy and was contrary to best practices, particularly in light of the well-known and straightforward requirements of Practice Book § 39-19, which provides in relevant part that the "judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands . . . (5) [t]he fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

A review of our prior decisions concerning the constitutional adequacy of a plea canvass makes clear that the canvass in the present case lies at the outermost boundary of what *Boykin* permits. Admittedly, our prior precedent could be read to set a low bar. This court has only once held that a plea canvass was constitutionally deficient. In *State* v. *Bugbee*, 161 Conn. 531, 290 A.2d 332 (1971), this court reversed the conviction of the defendant because, when the court canvassed the defendant at the time he pleaded guilty, the court asked him no questions whatsoever about his guilty plea. Id., 535–36. Because the record was silent, this court held that the canvass did not comply with *Boykin*. Id.

A closer look at our decisions, however, clarifies the extent to which the facts of the present case represent the floor of constitutionality. Although we have never required a guilty plea canvass to inform a defendant of the three *Boykin* rights and to obtain a waiver as to each, we have recognized that Practice Book § 39-19 (5) was

adopted specifically "in response to the holding in the *Boykin* case and to [en]sure a sufficient record . . . ." *Blue* v. *Robinson*, 173 Conn. 360, 373, 377 A.2d 1108 (1977). And, although we have stated that, notwithstanding its mandatory language, "[l]iteral compliance" with § 39-19 (5) is not required; *State* v. *Badgett*, supra, 200 Conn. 420; the adoption of that provision indicates that an inquiry into a defendant's understanding of those specific rights and their waiver ensures a sufficient record that a defendant's guilty plea is both knowing and voluntary.[3] Virtually all of the plea canvasses previously considered by our court to satisfy *Boykin* have incorporated at

[3] Practice Book § 39-27 (1) identifies, as a ground for allowing withdrawal of a guilty plea, that "[t]he plea was accepted without *substantial* compliance with Section 39-19 . . . ." (Emphasis added.) That provision provides further support for the conclusion that literal compliance with Practice Book § 39-19 (5) is not required in order to ensure the constitutional adequacy of a plea canvass. That conclusion, however, is difficult to reconcile with the recognition that the provision, which expressly provides that the trial courts "*shall not* accept the plea without first addressing the defendant personally and determining that he or she fully understands" the enumerated rights, was adopted to ensure compliance with *Boykin*. (Emphasis added.) Practice Book § 39-19; see, e.g., *Blue* v. *Robinson*, supra, 173 Conn. 373.

Our interpretation of what constitutes "substantial compliance" for purposes of the rules of practice in this context has only exacerbated the problem, revealing a circularity in our reasoning. Specifically, *Boykin* requires that "the record must affirmatively disclose that the defendant entered the plea voluntarily and intelligently." (Internal quotation marks omitted.) *State* v. *Suggs*, supra, 194 Conn. 226, citing *Boykin* v. *Alabama*, supra, 395 U.S. 242. We have stated that the test for "substantial compliance" with Practice Book § 39-19 "is whether, in light of all of the circumstances, the trial court's literal compliance . . . would have made any difference in the trial court's determination that the plea was voluntary." *State* v. *Ocasio*, 253 Conn. 375, 380, 751 A.2d 825 (2000). Parsing this out, § 39-19 (5), which was adopted to ensure compliance with *Boykin* and expressly requires the court to inquire regarding the *Boykin* rights, is satisfied as long as the colloquy reveals that the plea was voluntary and knowing. This reasoning clashes with our recognition that "the constitutional rights of a criminal defendant in taking either a guilty or a nolo plea must be scrupulously protected"; *State* v. *Godek*, supra, 182 Conn. 360; and arguably renders § 39-19 (5) meaningless. See *Office of Chief Disciplinary Counsel* v. *Vaccaro*, 353 Conn. 793, 812, 347 A.3d 856 (2025) (this court presumes "that the drafters of the Practice Book did not intend to enact meaningless provisions, and we avoid interpretations that render any provision

least some inquiry regarding the *Boykin* rights, thus providing stronger and less ambiguous evidence than that provided by the canvass at issue in this appeal that a defendant who pleaded guilty waived his constitutional rights knowingly and voluntarily.

In *State* v. *Badgett*, supra, 200 Conn. 418, for example, the trial court's canvass specifically advised the defendant concerning his right to confrontation. The trial court also advised him of his right to remain silent, which this court recognized is synonymous with the right against self-incrimination. Id., 420. As for the defendant's right to trial by a court or jury, this court noted that, although the trial court had referred to the "'right to trial'" only generally, the defendant in that case had initially pleaded not guilty and elected a jury trial, at which time he "must have been advised of his right to a trial by either the court or a jury . . . ." Id., 419. Similarly, in *State* v. *Godek*, supra, 182 Conn. 353, this court held the plea canvass to be constitutionally adequate when the trial court had advised the defendant of all of the rights enumerated in Practice Book (1963) § 2122 (now § 39-19 (5)), with the exception that the court had failed to mention the right to a court trial. Id., 361–62. Although this court stated that only substantial compliance with the rules of practice was required, we also noted that it was undisputed that, when the defendant initially pleaded not guilty, he was informed of his right to a trial by court or jury. Id.

Other canvasses validated by this court similarly incorporated a more scrupulous inquiry regarding a defendant's waiver of his constitutional rights than is evident from the record in the present case. We have held canvasses to be adequate when, although the trial court did not use the specific phrases used in *Boykin* to advise the defendant of his rights, the court's language

superfluous or produce absurd or unworkable results" (internal quotation marks omitted)).

As we have noted, however, the defendant has not relied on Practice Book § 39-19 (5) in this appeal. Moreover, he has not asked that this court overrule its prior precedent construing that rule.

substantially communicated the same idea. For example, in *State* v. *Carter*, supra, 243 Conn. 392, the trial court had expressly advised the defendant of his *Boykin* rights, except that, as to the right against self-incrimination, the trial court had merely advised the defendant that he "could have gone to trial . . . ." (Internal quotation marks omitted.) Id., 398–99. That advisement, this court observed, was sufficient under the federal constitution to apprise the defendant of his right against self-incrimination. Id., 400–401; cf. *State* v. *Nelson*, 221 Conn. 635, 640–41, 605 A.2d 1381 (1992) (it is sufficient under federal constitution for court to inform defendant that he cannot be compelled to enter plea of guilty or nolo contendere). Furthermore, in *State* v. *Suggs*, supra, 194 Conn. 223, the only deficiency alleged by the defendant was that, rather than advising him that he was waiving his right to confront and cross-examine witnesses, the court advised him that, by pleading guilty, he was "waiving his right to face [his] accuser . . . in the courtroom . . . ." (Internal quotation marks omitted.) Id., 227. This court observed that "[t]he commonly understood meaning of the word confront is 'to face.'" Id., 227–28. In fact, we observed, "a defendant unsophisticated in the law might be better informed of the right to confront witnesses by the use of the more commonly understood term, 'face.'" Id., 228.

The only case affirmed by this court in which the canvass was thinner than in the present case was *Blue* v. *Robinson*, supra, 173 Conn. 360. In *Blue*, the trial court not only failed to mention any of the *Boykin* rights in the plea canvass, it did not advise the defendant that he was waiving any constitutional rights by pleading guilty. Id., 364–65 n.2. *Blue* came to this court, however, from a significantly different procedural background—the petitioner appealed from the trial court's denial of his petition for a writ of habeas corpus. Id., 361–62. This court began its discussion of the petitioner's challenge to his plea canvass by acknowledging that, because he had raised the claim in the context of a habeas petition, the burden shifted. Id., 371. Rather than examining the record to determine whether it affirmatively disclosed

that the petitioner's plea was constitutionally adequate, the question presented was whether the petitioner had proven that the plea was not knowing or voluntary. See id. *Blue*, therefore, is of limited value in resolving the present case.[4]

Our precedent demonstrates that, although we have not required trial courts to expressly inform a defendant of each of the three *Boykin* rights and confirm the defendant's knowing and voluntary waiver of each right, we routinely have relied on the courts' discussion of those rights in order to determine whether the canvass was constitutionally adequate. That consistent reliance reinforces that a trial court's advisement to the defendant during a plea canvass of each of the three *Boykin* rights provides strong evidence that the waiver of those rights was voluntary and intelligent. By contrast, although the record in the present case is not silent, it is far from overwhelming.

We have arrived at our conclusion that the canvass in the present case withstands constitutional scrutiny, albeit barely so, on the basis of our existing precedent, which, as we have observed, the defendant has not asked us to revisit. See footnote 3 of this opinion. Because Practice Book § 39-19 (5) was adopted in order to ensure that a defendant's guilty or nolo contendere plea has been made in compliance with the standards enunciated in *Boykin*; see *State* v. *Godek*, supra, 182 Conn.

---

[4] For this same reason, *Blue*'s statement that the mere presence of defense counsel when the defendant entered the plea "militates strongly against a conclusion that the plea was involuntary," is not applicable in the present case. (Internal quotation marks omitted.) *Blue* v. *Robinson*, supra, 173 Conn. 376 n.6. We further observe that, even in the context of an appeal from a denial of a habeas petition, *Blue*'s heavy reliance on the mere presence of counsel during a plea canvass is questionable. In support of that proposition, *Blue* relied on decisions of this court that addressed the constitutionality of plea canvasses that occurred prior to *Boykin*. See id., citing *LaReau* v. *Warden*, 161 Conn. 303, 309, 288 A.2d 54 (1971), and *Williams* v. *Reincke*, 157 Conn. 143, 148, 249 A.2d 252 (1968). The suggestion in *Blue* that the mere presence of defense counsel tips the scale toward voluntariness is, at best, of limited precedential value today.

357; we emphasize that, as the best practice to ensure a defendant's understanding of the consequences of his guilty plea, trial courts should expressly inquire as to all five rights enumerated in § 39-19 (5), which includes all three *Boykin* rights.

The judgment of the Appellate Court is affirmed.

In this opinion MULLINS, C. J., and D'AURIA, ALEXANDER and BRIGHT, Js., concurred.