## STATE OF CONNECTICUT *v.* LAWRENCE SMITH
### (SC 17731)

Rogers, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued September 12—officially released November 25, 2008

*Elizabeth M. Inkster*, senior assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, senior assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The defendant, Lawrence Smith, appeals[1] from the judgment of conviction, rendered after a jury

[1] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

trial, of murder in violation of General Statutes §§ 53a-54a (a)[2] and 53a-8 (a),[3] felony murder in violation of General Statutes §§ 53a-54c[4] and 53a-8 (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a)[5] and 53a-54a, conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2)[6] and 53a-48 (a), and hindering prosecution in the first degree in violation of General Statutes § 53a-165 (5).[7] On appeal, the defendant contends that

[2] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

[3] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[4] General Statutes § 53a-54c provides in relevant part: "A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[5] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[6] General Statutes § 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (2) is armed with a deadly weapon . . . ."

[7] General Statutes § 53a-165 provides in relevant part: "[A] person 'renders criminal assistance' when, with intent to prevent, hinder or delay the discovery or apprehension of, or the lodging of a criminal charge against, another person whom such person knows or believes has committed a felony or is being sought by law enforcement officials for the commission of a felony, or with intent to assist another person in profiting or benefiting from the commission of a felony, such person . . . (5) suppresses, by an act of concealment, alteration or destruction, any physical evidence which might

the trial court: (1) violated his right to a speedy trial when it improperly denied his motion to dismiss the charges against him following the entry of a nolle prosequi of the state's initial charges; and (2) violated both his constitutional rights under the confrontation clauses of the federal and state constitutions and the rules of evidence when it admitted into evidence a recorded conversation between a coconspirator and a jailhouse informant that implicated the defendant in the crimes charged. We reject the defendant's claims and, accordingly, we affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On July 21, 2000, Robert Marrow and Jonathan Rivers, acting on the orders of Miguel Estrella, a drug dealer in Meriden, met the victim, Juan Disla, who was a rival drug dealer, at a Dairy Queen in Meriden to rob him. During the course of the robbery, Marrow shot the victim in the leg. Marrow contacted Estrella for instructions and was told to drive to the defendant's house. Marrow and Rivers took the victim, whom they had bound with duct tape, to the defendant's house, where Estrella and the defendant removed money and cocaine from the victim's vehicle. Thereafter, the defendant, Estrella, Rivers and Marrow drove the victim to a remote location in a wooded area in the Higganum section of Haddam, where the victim was suffocated to death. The four men left the victim's body in the woods and returned to Meriden. That evening, Estrella, Marrow, Rivers and some friends drove the victim's car to New York state and abandoned it on the highway, where it eventually was vandalized.

The state also offered evidence, which the defendant unsuccessfully challenges in this appeal, to establish the following additional facts. Two days after the murder, Estrella and the defendant returned to the location of

aid in the discovery or apprehension of such other person or in the lodging of a criminal charge against such other person . . . ."

the victim's body with a chainsaw, plastic buckets and several containers of acid. The defendant used the chainsaw to dismember the body while Estrella watched. The defendant and Estrella then placed the body parts in the buckets and covered them with acid to destroy them. The defendant subsequently disposed of any remains. The victim's body was never recovered, and no bloodstains, DNA or bones ever were found.

The record reflects the following procedural history. In 2001, the defendant was arrested in connection with the murder of the victim. He was charged with conspiracy to commit murder in violation of §§ 53a-48 (a) and 53a-54a, and kidnapping in the first degree in violation of General Statutes § 53a-92.[8] On December 5, 2001, after the defendant had moved for a speedy trial, the state entered a nolle prosequi of the charges pursuant to the missing witness provision of General Statutes § 54-56b[9] and Practice Book § 39-30.[10] The state repre-

---

[8] General Statutes § 53a-92 (a) provides: "A person is guilty of kidnapping in the first degree when he abducts another person and: (1) His intent is to compel a third person (A) to pay or deliver money or property as ransom or (B) to engage in other particular conduct or to refrain from engaging in particular conduct; or (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually; or (B) accomplish or advance the commission of a felony; or (C) terrorize him or a third person; or (D) interfere with the performance of a government function."

[9] General Statutes § 54-56b provides: "A nolle prosequi may not be entered as to any count in a complaint or information if the accused objects to the nolle prosequi and demands either a trial or dismissal, except with respect to prosecutions in which a nolle prosequi is entered upon a representation to the court by the prosecuting official that a material witness has died, disappeared or become disabled or that material evidence has disappeared or has been destroyed and that a further investigation is therefore necessary."

[10] Practice Book § 39-30 provides: "Where a prosecution is initiated by complaint or information, the defendant may object to the entering of a nolle prosequi at the time it is offered by the prosecuting authority and may demand either a trial or a dismissal, except when a nolle prosequi is entered upon a representation to the judicial authority by the prosecuting authority that a material witness has died, disappeared or become disabled or that material evidence has disappeared or has been destroyed and that a further investigation is therefore necessary."

sented that Estrella, an essential witness in the case, was asserting his fifth amendment privilege against self-incrimination and therefore would be unavailable to testify. The defendant filed a motion to dismiss the charges on the ground, inter alia, that he had been denied a speedy trial. The court, *Fasano, J.*, denied the motion, and thereafter, the defendant was released from custody.

Pursuant to a warrant dated March 9, 2005, the defendant subsequently was rearrested in connection with the murder of the victim. He was charged in a long form information with murder, felony murder, conspiracy to commit murder, conspiracy to commit robbery in the first degree and hindering prosecution in the first degree. The defendant pleaded not guilty and, after a jury trial, was found guilty of all the charges. In accordance with the verdict, the trial court, *Alexander, J.*, imposed a total effective sentence of seventy-five years imprisonment. This direct appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant's first claim is that the trial court improperly denied his motion to dismiss in violation of his right to a speedy trial under the sixth amendment to the federal constitution.[11] The defendant raises the following theories to support this claim: (1) in accepting the state's entry of a nolle prosequi, the trial court improperly relied on the state's representation that its

---

[11] The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the [s]tate and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

essential witness would be rendered unavailable because the witness intended to invoke his fifth amendment privilege against self-incrimination; (2) the trial court failed to recognize that this court's holding in *Cislo* v. *Shelton*, 240 Conn. 590, 692 A.2d 1255 (1997), required that the court construe the entry of the nolle prosequi as functionally equivalent to a dismissal of all charges, thereby precluding the refiling of charges arising from the same factual scenario several years later; and (3) the trial court improperly failed to apply the four factor test enunciated in *Barker* v. *Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), which would have established that the defendant's right to a speedy trial was violated. In response, the state contends that: (1) the trial court properly entered the nolle prosequi under the missing witness provision because it was entitled to rely on the state's representation that its essential witness had become unavailable based on the witness' intent to invoke his fifth amendment privilege against self-incrimination;[12] (2) the holding in *Cislo* does not compel a trial court to construe a nolle prosequi as the functional equivalent of a dismissal "with prejudice," and in any event the state was not precluded from bringing charges against the defendant on previously uncharged crimes; and (3) the defendant's right to a speedy trial was not violated under *Barker*. We disagree with the defendant's first two claims and decline to reach the third claim because the record is inadequate for review.

---

[12] The state also maintains that the defendant waived this claim because he did not object to the trial court's acceptance of the state's representation of the witness' unavailability at the time that the nolle prosequi entered in 2001. We disagree. The record clearly indicates that, at the 2005 hearing on the motion to dismiss that is the subject of this appeal, the defendant raised this issue in its brief and at oral argument to the trial court. Indeed, without any objection by the state, the trial court addressed this issue and expressly noted that the defendant had not waived his right to take an appeal on its ruling. Accordingly, the defendant did not waive this claim, and we may consider it on the merits.

The following additional undisputed facts and procedural history are relevant to our resolution of the speedy trial claim. As we previously have indicated, following the state's nolle of the charges against the defendant on the basis of a representation from Estrella's defense counsel that Estrella was unavailable because he intended to invoke his fifth amendment privilege against self-incrimination if called to testify, the court denied the defendant's motion to dismiss the charges and ordered that he be released.[13] When the defendant subsequently was arrested in 2005 in connection with Disla's murder, the state charged him again with conspiracy to commit murder and also charged him with murder, felony murder, conspiracy to commit robbery in the first degree and hindering prosecution in the first degree. On May 5, 2005, the defendant moved to dismiss the charges, claiming that his right to a speedy trial had been violated because the state first had charged him with crimes in connection with Disla's murder four years previously and, through the entry of the nolle prosequi, indefinitely had postponed resolution of those charges. The defendant contended that, at the December 5, 2001 proceeding, the trial court improperly had accepted the state's representation that its essential witness was unavailable due to his anticipated assertion of his fifth amendment right to remain silent. The defendant asserted that the trial court was obligated to inquire further into the unavailability of the witness before it found him unavailable, noting that the state could have granted the witness immunity and thus rendered him available to testify by removing the threat

---

[13] At the hearing on the defendant's motion to dismiss, the state made the following representation to the court: "The state has a faxed letter from [Attorney] Wesley Spe[a]rs, who represents the codefendant, [Estrella], who is an essential witness in this case stating [Estrella] would assert his fifth amendment privilege against self-incrimination in the [defendant's case]. Under those circumstances, [Estrella] is unavailable. He is a key witness in [the] case. I'll enter a nolle under the missing witness statute."

of self-incrimination. Because the trial court had not done so, the defendant contended that it improperly had made a finding of unavailability, thereby rendering the entry of the nolle prosequi pursuant to § 54-56b improper. Further, the defendant contended that, in accordance with this court's holding in *Cislo*, the nolle effectively was transformed into a dismissal because more than thirteen months had elapsed since the entry of the nolle; see General Statutes § 54-142a (c);[14] and such dismissal barred his reprosecution.

The trial court, *Damiani, J.*, denied the defendant's motion to dismiss. The court gave the following reasons for its ruling. First, the state had made the necessary representations to allow the nolle prosequi to enter when it informed the court that the witness was unavailable on the basis of his assertion of his fifth amendment privilege against self-incrimination. The court stated that it was not necessary to compel a witness to appear formally and assert his right against self-incrimination to support the entry of the nolle, and that it was beyond the court's authority to compel the state to offer immunity to a witness, as the defendant had suggested. The nolle therefore properly had been entered in accordance with § 54-56b. Second, the court noted that, with respect to the holding in *Cislo*, the nolle would indeed, after thirteen months had passed, become the functional equivalent of a dismissal, but the dismissal would be *without prejudice* and thus would not bar future prosecution. Finally, the court noted that, with the exception of the conspiracy to commit murder charge, the defendant had been charged with new offenses, uncharged at the time of the earlier arrest. Conse-

---

[14] General Statutes § 54-142a (c) provides in relevant part: "Whenever any charge in a criminal case has been nolled in the Superior Court . . . if at least thirteen months have elapsed since such nolle, all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge shall be erased. . . ."

quently, even if the one overlapping charge, conspiracy to commit murder, were to be eliminated, the defendant still would be subject to charges of murder, felony murder, conspiracy to commit robbery in the first degree and hindering prosecution in the first degree.[15]

## A

The standard of review for a ruling on a motion to dismiss is well settled. In general, "[b]ecause a motion to dismiss effectively challenges the jurisdiction of the court, asserting that the state, as a matter of law and fact, cannot state a proper cause of action against the defendant, our review of the [trial] court's legal conclusions and resulting denial of the defendant's motion to dismiss is de novo." *State* v. *Rivers*, 283 Conn. 713, 723–24, 931 A.2d 185 (2007); accord *State* v. *Haight*, 279 Conn. 546, 550, 903 A.2d 217 (2006). In the present case, the factual circumstances underlying the motion to dismiss are not in dispute, and instead the defendant challenges the trial court's legal conclusions. As such, our standard of review is plenary. *State* v. *Solek*, 242 Conn. 409, 419, 699 A.2d 931 (1997) (reviewing motion to dismiss under de novo standard because "[w]here . . . the question is a matter of statutory construction rather than of factual sufficiency, this determination constitutes a question of law that is reviewed de novo"); see also *State* v. *Haight*, supra, 550 (questions of statutory interpretation subject to plenary review); *State* v. *McCahill*, 265 Conn. 437, 446, 828 A.2d 1235 (2003) (questions of law concerning interpretation of statute governing speedy trial motion as well as rules of practice subject to plenary review).

[15] Immediately after the court denied the motion to dismiss, it noted that the defendant was free to challenge its ruling in an interlocutory appeal. The defendant indicated that he wanted to proceed with his probable cause hearing, and the court noted for the record that the defendant had not waived any right to take an appeal on its ruling on the motion to dismiss.

## B

The defendant's initial contention is that the trial court improperly accepted the state's representations that a key witness in its case against the defendant was unavailable due to the witness' intent to assert his fifth amendment privilege against self-incrimination.[16] The state asserts that the trial court was entitled to rely upon the state's representation with respect to the reasons to support the entry of the nolle prosequi. We agree with the state.

Section 54-56b allows the entry of a nolle prosequi "upon a representation to the court by the prosecuting official that a material witness" is unavailable to testify. It long has been the practice that a trial court may rely upon certain representations made to it by attorneys, who are officers of the court and bound to make truthful statements of fact or law to the court. See Rules of Professional Conduct 3.3 (a) (1). Against the backdrop provided by this fundamental principle of ethical conduct, this court has noted that, when determining whether to accept the entry of a nolle prosequi pursuant to § 54-56b, "the trial court need not receive evidence, and thus makes no findings of fact, to determine the accuracy of the state's representations." *State* v. *Lloyd*, 185 Conn. 199, 204, 440 A.2d 867 (1981). The representations of the state provide a sufficient basis for the entry of a nolle prosequi unless the court "is persuaded that the prosecutor's exercise of discretion [in entering the nolle] is clearly contrary to manifest public interest." Id.

In this case, the state made the appropriate representations when it introduced the letter from Estrella's counsel indicating that Estrella would be unavailable

---

[16] We note that the defendant does not dispute that Estrella's invocation of this privilege falls within Practice Book § 39-30 or General Statutes § 54-56b, only that the trial court improperly relied on the state's representation as evidence.

due to his assertion of his fifth amendment privilege against self-incrimination. The trial court was not required to conduct an evidentiary hearing regarding the state's representation, and nothing in the record offers any hint that the nolle was contrary to public interest. Because the representation was sufficient to support a finding that the witness was unavailable, the entry of the nolle prosequi was proper.

The defendant cannot prevail on his assertions that "the privilege against self-incrimination is a personal privilege and may not be invoked on behalf of another," and that it was improper for the trial court to accept the state's representation without conducting a further inquiry into whether the witness would assert the privilege because they improperly juxtapose two principles. The privilege against self-incrimination is personal and may not be invoked on behalf of another. See, e.g., *Couch* v. *United States*, 409 U.S. 322, 327, 93 S. Ct. 611, 34 L. Ed. 2d 548 (1973); *State* v. *Smith*, 201 Conn. 659, 664, 519 A.2d 26 (1986). The privilege itself, however, is an evidentiary privilege, i.e., it is asserted to bar the admission of evidence before a tribunal. In other words, when evidence is to be presented to a court, a witness who fears self-incrimination through his testimony may assert the privilege to prevent that self-incrimination. In this case, although the privilege was personal to Estrella, the state was not seeking to assert that privilege, but, rather, merely was reporting that it had been informed that the witness, upon advice of counsel, would do so. The statute simply requires a representation by the prosecuting authority that an essential witness is unavailable, and thus, no further inquiry was required. *State* v. *Lloyd*, supra, 185 Conn. 204.

C

The defendant also contends, consistent with this court's holding in *Cislo* v. *Shelton*, supra, 240 Conn.

590, that the nolle prosequi functionally converted into a dismissal pursuant to § 54-142a (c) because more than thirteen months had elapsed since the entry of the nolle prosequi in 2001. This dismissal, the defendant claims, barred the state from bringing charges against the defendant in 2005. He further asserts that the state violated his right to a speedy trial by allowing the threat of prosecution to loom over him for more than three years. We disagree.

A nolle prosequi leaves a defendant free and unencumbered by the nolled charge, and the state may continue prosecution of a defendant only after filing a new information and making a new arrest of the defendant within the statute of limitations. *State* v. *Winer*, 286 Conn. 666, 684–85, 945 A.2d 430 (2008). Because no pending charges remain to be resurrected, the defendant is not thereby subjected to "an indefinitely overhanging cloud of subsequent prosecution"; *Cislo* v. *Shelton*, supra, 240 Conn. 607; in violation of his right to a speedy trial. Moreover, because the nolle prosequi eliminates the charges, there can be no violation of a defendant's right to a speedy trial predicated solely on the entry of a nolle. *State* v. *Lloyd*, supra, 185 Conn. 201 ("[t]he effect of a nolle prosequi is to end pending proceedings without an acquittal and without placing the defendant in jeopardy"); see also *State* v. *Winer*, supra, 684–85, and cases cited therein.

Examining the defendant's claim, it is clear that his right to a speedy trial was not violated. The nolle prosequi properly entered in 2001. The defendant was relieved of any threat of prosecution during the intervening period between the entry of the nolle and his rearrest in 2005. Indeed, the state had to file a new information and rearrest the defendant to prosecute him.

With respect to the defendant's claim that the nolle converted into a dismissal after thirteen months had

elapsed, thus barring future prosecution, the defendant erroneously equates the term "dismissal" with "dismissal with prejudice." In *Cislo* v. *Shelton*, supra, 240 Conn. 599, this court held that "the entry of a nolle plus the passage of thirteen months, which results in the automatic erasure of relevant records under § 54-142a (c), constitutes a dismissal for the purposes of § 53-39a." After reviewing the legislative history surrounding the enactment of § 53-39a, however, the court noted that a nolle was functionally equivalent to a dismissal *without prejudice.* Id., 609; see also *State* v. *Talton*, 209 Conn. 133, 141, 547 A.2d 543 (1988). Such a dismissal does not preclude the state from filing charges—even the same ones—at a later time, provided that the statute of limitations has not run. *State* v. *Talton*, supra, 141–42 (noting that if state cannot make appropriate representation to allow nolle to enter, charges are dismissed and state may not reprosecute on same offense; but if state makes necessary representation and nolle enters, state is not precluded from refiling charges).

D

The defendant finally asserts that, pursuant to *Barker* v. *Wingo*, supra, 407 U.S. 530,[17] his right to a speedy trial was violated because there was a considerable delay from the time that he first had been arrested in 2001, to the time that he was tried in 2005. We conclude that the defendant has not provided us with an adequate record to review this claim.

[17] In *Barker* v. *Wingo*, supra, 407 U.S. 530, the United States Supreme Court adopted a four factor balancing test to determine whether a defendant's speedy trial right has been violated. The approach of the court was set forth as follows: "A balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id.

Under *Barker*, the determination of whether such rights have been violated requires a case-by-case approach in which the court examines the factual circumstances in light of a balancing test of the following four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id.; *State* v. *Johnson*, 190 Conn. 541, 544–45, 461 A.2d 981 (1983). In this case, however, the defendant did not ask the trial court to apply *Barker* and, therefore, the court did not make the factual findings required under that test. "It is well established that [i]t is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 232, 828 A.2d 64 (2003); see also Practice Book §§ 60-5 and 66-5. As the record does not contain all of the relevant factual findings, we decline to review this claim.[18]

II

The defendant's second principal claim is that the trial court improperly admitted a recording[19] of a con-

---

[18] To the extent that the defendant relies on *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as the basis for our review, his reliance is misplaced. Under *Golding*, the defendant can prevail on an unpreserved claim only if the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id. Here, the record is inadequate, and thus the claim fails the first prong of *Golding*.

[19] At both the probable cause hearing and at trial, the parties referred to the audiotape recording and the transcript of the audiotape interchangeably. Neither party presented any distinction between the two on appeal. For

versation between Estrella,[20] his coconspirator, and Wayne Williams, Estrella's cellmate at the Hartford correctional center in 2000, in violation of the confrontation clause of the federal constitution[21] and the rules of evidence. Specifically, he claims that Williams' portion of the conversation should have been excluded under *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), as testimonial statements. The defendant further claims that the trial court improperly admitted Estrella's portion of the conversation in violation of: (1) the defendant's right to confrontation because Estrella's statements did not bear sufficient indicia of reliability pursuant to *Ohio* v. *Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980); and (2) § 8-6 (4) of the Connecticut Code of Evidence[22] because

---

ease of use, we refer to the audiotape recording and transcript collectively as "the recording."

[20] In a separate trial, Estrella was convicted of murder, felony murder, conspiracy to commit murder, and conspiracy to commit robbery in the first degree, and his conviction was affirmed by this court. *State* v. *Estrella*, 277 Conn. 458, 893 A.2d 348 (2006).

[21] Although the defendant asserts violations of both the state and federal constitutions, he has not provided this court with an independent analysis of his state constitutional claim as required under *State* v. *Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992). We therefore address his claim only under the federal constitution. See *State* v. *Nash*, 278 Conn. 620, 623–24 n.4, 899 A.2d 1 (2006).

The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ."

[22] Section 8-6 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness . . .

"(4) Statement against penal interest. A trustworthy statement against penal interest that, at the time of its making, so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. In determining the trustworthiness of a statement against penal interest, the court shall consider (A) the time the statement was made and the person to whom the statement was made, (B) the existence of corroborating evidence in the case, and (C) the extent to which the statement was against the declarant's penal interest. . . ."

Estrella's statements were not statements against penal interest. We reject the defendant's claims and discuss them each in turn.

The record reveals the following additional undisputed facts and procedural history that are necessary to resolve this claim. In September, 2000, Williams, a Jamaican citizen, was in federal custody for drug violations. Estrella was also in custody in the Hartford correctional center on an unrelated drug charge and was being housed in the same cell as Williams. During this time, Williams approached federal authorities, offering information about statements Estrella had made to him regarding Disla's murder. Williams agreed to wear a recording device and elicit incriminating statements from Estrella in exchange for favorable treatment. On October 4, 2000, Williams wore the device and taped his conversations with Estrella. As a result of his cooperation, despite facing a sentence ranging from five years to life in prison under the federal sentencing guidelines, Williams was sentenced to time served, a total of seventeen months in prison. He was subsequently deported to Jamaica.

The recording, which was more than four hours in length, was introduced at trial. In the recording, Estrella recounted Disla's murder in great detail. He explained that he had been the leader who planned the murder, organized his coconspirators, and was present throughout the murder and subsequent destruction of the body. Estrella described how the defendant had dismembered the body with a chainsaw and participated in its destruction by placing it in acid, and then Estrella bragged to Williams that "if you want something done right, we did it right." Estrella predicted that because they had done the job so well, the crime would never be solved unless the police were able to convince all four men who had participated to confess. Throughout the recording, Estrella portrayed the defendant as a willing partici-

pant, fully involved in the robbery and murder of the victim, who took the lead in dismembering and destroying the body, kept portions of it soaking in acid at his home to destroy it completely, and, after it had liquefied, finally disposed of it in an unknown location.

Although Williams had been deported in 2001, he returned to the United States at some point prior to the defendant's probable cause hearing and thereafter was arrested and held in custody by federal authorities in Connecticut at the time of the defendant's hearing. The state never called Williams as a witness, and Estrella was unavailable as a witness because he had refused to testify pursuant to his fifth amendment privilege against self-incrimination.

At the probable cause hearing, the state introduced into evidence the recording of Estrella's conversations with Williams as a statement against penal interest. The state stipulated that Williams was acting as a police agent. The defendant conceded that Estrella's statements were nontestimonial but argued that the admission of his statements could not satisfy the indicia of reliability necessary under *Ohio* v. *Roberts*, supra, 448 U.S. 66. The trial court, *Gold, J.*, ruled that Estrella's statements were admissible to establish probable cause because they were nontestimonial and they were reliable under the totality of the circumstances as required under *Roberts*. The court found that: the statements were squarely against Estrella's penal interest because they directly implicated him in an unsolved murder; they were made in a private manner and location (the prison cell); they were intended to be confidential, as evidenced by Estrella's tone and manner; and the two men had formed a sufficiently strong bond that confidences between them would not be unusual. The court also noted that, although at times Williams seemed to lead some of the discussion, Estrella was "a willing and active participant . . . who provided nearly all of the

substance of the discussion." The court noted the fact that, in eleven pages of the transcript of the recording, Estrella had provided a highly detailed account of the crime, while Williams had responded only with meager "mm-hmms." The court, therefore, minimized Williams' role in the conversation and concluded that "the recorded statement belies any claim that Estrella was not . . . the active participant in the discussion and the party who offered these detailed statements, against his own penal interest." In light of all of these factors, the court concluded that Estrella's statements "bore the particularized guarantees of reliability required by the confrontation clause."

At trial, the defendant challenged the admission of the recording, once again conceding that Estrella's statements were nontestimonial. The trial court, *Alexander, J.*, incorporated the defendant's prior arguments from the probable cause hearing and agreed with Judge Gold's ruling at the hearing, admitting the recording into evidence.

A

We begin our analysis by setting forth the appropriate standard of review and governing legal principles. The standard under which we review evidentiary claims depends on the specific nature of the claim presented. *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007). "To the extent a trial court's admission of evidence is based on an interpretation of [law], our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review." Id. "We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . In other words, only after a trial court has made the legal determination that a par-

ticular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought. . . . A paradigmatic example of this distinction would be a trial court's conclusion that a hearsay statement bears the requisite indicia of trustworthiness and reliability necessary for admission under the residual exception to the hearsay rule, which would be reviewed for an abuse of discretion. . . . By contrast, the question of whether the trial court properly could have admitted that statement under the residual exception if the admission of that type of statement *expressly was barred* under another hearsay exception would present a question of law over which the appellate courts exercise plenary review." (Citations omitted; emphasis in original.) Id., 218–19.

As a general matter, hearsay statements may not be admitted into evidence unless they fall within a recognized exception to the hearsay rule. *State* v. *Rivera*, 268 Conn. 351, 360–61, 844 A.2d 191 (2004). In the context of a criminal trial, however, the admission of a hearsay statement against a defendant is further limited by the confrontation clause of the sixth amendment. Under *Crawford* v. *Washington*, supra, 541 U.S. 59, hearsay statements of an unavailable witness that are testimonial in nature may be admitted in accordance with the confrontation clause only if the defendant previously has had the opportunity to cross-examine the unavailable witness. Nontestimonial statements, however, are not subject to the confrontation clause and may be admitted under state rules of evidence. *Davis* v. *Washington*, 547 U.S. 813, 821, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). Thus, the threshold inquiries that determine the nature of the claim are whether the statement was hearsay, and if so, whether the statement was testimo-

nial in nature, questions of law over which our review is plenary. *State* v. *Slater*, 285 Conn. 162, 170, 939 A.2d 1105, cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008).

B

The defendant's first claim is that the trial court improperly admitted the recording of Williams' portions of the conversation in violation of the sixth amendment because Williams' statements were testimonial and should have been excluded under *Crawford* v. *Washington*, supra, 541 U.S. 36. Thus, the defendant asserts that Williams' statements were hearsay. The defendant concedes that this claim was not raised in the trial court and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The state contends in response that: (1) the defendant waived this claim in the trial court and therefore is not entitled to raise it on appeal; (2) Williams' statements were not hearsay because they were not offered for their truth but instead to provide context for Estrella's statements; and (3) Williams' statements were not testimonial and therefore did not need to be excluded pursuant to *Crawford*. We agree with the defendant that we may review the claim under *Golding*, but we conclude that he cannot prevail on the merits of his claim.

As a threshold matter, we address the issue of whether this unpreserved claim is reviewable under *Golding*. Under *Golding*, a defendant may prevail on an unpreserved claim only if the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional

violation beyond a reasonable doubt." Id. The first two prongs govern whether we may review the claim, while the second two control whether the defendant may prevail on his claim because there was constitutional error that requires a new trial. *State* v. *Fabricatore*, 281 Conn. 469, 476, 915 A.2d 872 (2007). Whether a claim has been waived implicates the third prong of *Golding*, and if the claim has been waived, it fails because the defendant cannot demonstrate that a constitutional violation clearly exists. Id., 481–82.

With respect to the first two prongs, we note that the record, comprised of transcripts from the trial and the probable cause hearing along with the recording in question, clearly is adequate for our review, and the claim is of constitutional magnitude because it implicates the defendant's sixth amendment right of confrontation. Consequently, we conclude that the claim is reviewable under *Golding*. With respect to the third prong, the state contends that the defendant waived his claim in the trial court, and, therefore, he cannot demonstrate that the alleged constitutional violation clearly exists. We disagree.

It is well settled that a criminal defendant may waive rights guaranteed to him under the constitution. Id., 478. The mechanism by which a right may be waived, however, varies according to the right at stake. *State* v. *Gore*, 288 Conn. 770, 778, 955 A.2d 1 (2008). "For certain fundamental rights, the defendant must personally make an informed waiver. . . . For other rights, however, waiver may be effected by action of counsel. . . . *New York* v. *Hill*, 528 U.S. 110, 114, 120 S. Ct. 659, 145 L. Ed. 2d 560 (2000); see also *Gonzalez* v. *United States*, 553 U.S. 242, 247–48, 128 S. Ct. 1765, 170 L. Ed. 2d 616 (2008)." (Internal quotation marks omitted.) *State* v. *Gore*, supra, 778. With respect to a fundamental right such as the right of confrontation, we must "indulge every reasonable presumption against waiver

. . . ." (Internal quotation marks omitted.) *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938). Accordingly, waiver of a fundamental right may not be presumed from a silent record. *Blue* v. *Robinson*, 173 Conn. 360, 380, 377 A.2d 1108 (1977), citing *Boykin* v. *Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).

It is well settled that a party may raise a claim implicating the right of confrontation for the first time on appeal. *State* v. *Jarzbek*, 204 Conn. 683, 691, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988). A defendant may waive his right of confrontation, however, either expressly or impliedly by his deliberate action. See *State* v. *Jones*, 281 Conn. 613, 636, 916 A.2d 17 (noting that defendant may waive rights of confrontation "by his voluntary and deliberate absence from trial . . . disruptive conduct which requires his removal from the courtroom . . . or by causing a witness to be unavailable for trial for the purpose of preventing that witness from testifying" [citations omitted; internal quotation marks omitted]), cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007). When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. See, e.g., *State* v. *Holness*, 289 Conn. 535, 544–45, 958 A.2d 754 (2008) (holding that defendant waived *Crawford* claim when counsel agreed to limiting instruction regarding hearsay statements introduced by state on cross-examination); *State* v. *Fabricatore*, supra, 281 Conn. 481 (concluding defendant waived claim when he not only failed to object to jury instruction but also expressed satisfaction with it and argued that it was proper).

The state contends that the defendant's concession both at the probable cause hearing and at trial that a portion of the recording was nontestimonial constitutes

a waiver of his claim that Williams' statements improperly were introduced in violation of *Crawford*. We disagree. It is clear from the context of the discussion that both the state and the defendant understood that it was Estrella's portion of the recordings that were at issue. At the hearing, the state established that Estrella was unavailable and introduced the recording as a statement against his penal interest. The defendant then conceded that the recording was nontestimonial because *"the declarant* would not reasonably have believed it would be available at a trial later on." (Emphasis added.) Both parties thus were focused on the admissibility of Estrella's statements, and there was no mention of Williams at all. As we previously have noted, we may not presume waiver from a silent record. We therefore conclude that the defendant did not waive his *Crawford* claim with respect to Williams, and accordingly, we proceed to the merits of the defendant's claim.

As we previously have stated herein, the confrontation clause applies only to statements that are testimonial in nature. *Davis* v. *Washington*, supra, 547 U.S. 821. As a general matter, a testimonial statement "is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." (Internal quotation marks omitted.) *Crawford* v. *Washington*, supra, 541 U.S. 51. Although the United States Supreme Court did not provide a comprehensive definition of what constitutes a "testimonial" statement in *Crawford*, the court did describe three core classes of testimonial statements: "[1] ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially . . . [2] extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testi-

mony, or confessions [and] . . . . [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . ." (Citations omitted; internal quotation marks omitted.) Id., 51–52.

Subsequently, in *Davis* v. *Washington*, supra, 547 U.S. 822, the United States Supreme Court elaborated on the third category and applied a "primary purpose" test to distinguish testimonial from nontestimonial statements given to police officials, holding: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." In *Davis*, the court held that statements given to a 911 operator while an emergency was unfolding were nontestimonial and could be admitted because they were given for the primary purpose of responding to the emergency. Id., 829. In contrast, statements given in an affidavit following a 911 telephone call to a police officer were testimonial and therefore inadmissible because they were provided to the officer after the emergency had passed for the primary purpose of developing evidence against an accused. Id., 832.

In *State* v. *Slater*, supra, 285 Conn. 172 n.8, we reconciled *Crawford* and *Davis*, noting: "We view the primary purpose gloss articulated in *Davis* as entirely consistent with *Crawford*'s focus on the reasonable expectation of the declarant. . . . [I]in focusing on the primary purpose of the communication, *Davis* provides a practical way to resolve what *Crawford* had identified as the

crucial issue in determining whether out-of-court statements are testimonial, namely, whether the circumstances would lead an objective witness reasonably to believe that the statements would later be used in a prosecution." (Citation omitted; internal quotation marks omitted.) We further emphasized that "this expectation must be reasonable under the circumstances and not some subjective or far-fetched, hypothetical expectation that takes the reasoning in *Crawford* and *Davis* to its logical extreme." Id., 175. With these principles in mind, we turn to the defendant's claim.

We previously have not been called upon to decide whether an informant's statements in a recording of his conversation with another party constitute testimonial evidence subject to the confrontation clause. We note, however, that although the consensus among the federal and state courts that have considered this question is that an informant's portion of a recorded conversation with a defendant made in the course of an investigation is not testimonial in nature, the deciding factor in their determination is the purpose for which the statements were introduced. See, e.g., *United States* v. *Loving*, United States Court of Appeals, Docket No. 06-4708, *7 (4th Cir., July 5, 2007) (statements by nontestifying informant concerning drug transactions introduced by detective nontestimonial because introduced only for purpose of explaining course of investigation); *United States* v. *Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006) (holding informant's statements in recorded conversation with defendant were nontestimonial because admitted only to provide context for incriminating statements by defendant), cert. denied sub nom. *Dunklin* v. *United States*, 549 U.S. 1149, 127 S. Ct. 1019, 166 L. Ed. 2d 768 (2007); *United States* v. *Walter*, 434 F.3d 30, 34 (1st Cir.) (recorded statements of informant wearing wire to capture incriminating statements of defendant

were nontestimonial when admitted only to provide context for conversation and defendant's admissions), cert. denied, 547 U.S. 1199, 126 S. Ct. 2879, 165 L. Ed. 2d 907 (2006); *United States* v. *Hendricks*, 395 F.3d 173, 184 (3d Cir. 2005) (holding that informant's portion of recorded conversation necessary to place conversation in context may be admitted without violating confrontation clause); *Turner* v. *Commonwealth*, 248 S.W.3d 543, 546 (Ky. 2008) (informant's statements not testimonial because used only to provide context for defendant's incriminating statements); *State* v. *DeJesus*, 947 A.2d 873, 883 (R.I. 2008) (recorded statements by informant wearing wire to capture statements of defendant in which informant asked defendant leading questions were nontestimonial because not offered for truth but "merely provided the framework or context within which [the] defendant's statements could be understood"). When an informant's statements were used only to provide context for the incriminating statements of the other party, these federal and state jurisdictions have concluded that the informant's statements were neither hearsay nor considered testimonial statements for the purposes of the confrontation clause.

Although we agree with this contextual approach, it must be cautioned that there is a fine line between properly admitting an informant's statements under this theory and improperly admitting statements that are truly testimonial. There is a significant risk that assertive statements made by an informant and included as part of a recording may be perceived as substantive evidence of the defendant's guilt in the absence of any limiting instruction. Indeed, in the present case, the state acknowledged at oral argument to this court that some of Williams' statements were testimonial. Therefore, we agree with the contextual approach to the extent that an informant's statements will be deemed nonhearsay and nontestimonial when the statements

merely place the conversation in context and serve no substantive purpose.

In the present case, we view Williams' recorded statements as falling into three separate categories: (1) nonassertive vocalizations, e.g., "mm-hmm" or "yeah"; (2) questions Williams directly posed to Estrella about the crime;[23] and (3) statements Williams made that directly implicated Estrella or the defendant in the commission of the crime.[24] We readily conclude that the first category of statements, the nonassertive vocalizations, were nontestimonial. To the extent that they provide context for Estrella's statements, it is clear that they simply were common vocalizations used in conversation to acknowledge another person's words as a by-product of active listening rather than to assert any particular fact. Therefore, these vocalizations do not fall under the protection of the confrontation clause.

With respect to the second category, Williams' questions, we find the rationale of our sister tribunals persuasive and conclude that this category also is nontestimonial. The questions were used solely for the purpose of providing the context within which Estrella's answers could be understood. Indeed, questions standing alone make no assertions at all. They are a means to obtain information, and as such are not " 'solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact' " as provided by the general definition set forth in *Crawford* v. *Washington*, supra, 541 U.S. 51. Although Williams did ask Estrella some leading questions, the content of his ques-

---

[23] For example, the defendant cited the following instances of Williams' questioning, wherein Williams introduced the defendant's name into the conversation with Estrella: "Ah, Larry, what him make is the deal? Larry's the one who cut up the body, right?" and "So where did Larry bury that body?"

[24] For example, Williams stated: "Larry is the one supposed to be in jail"; and repeated that sentiment several times. Williams also stated "Mm-mm. Cause [Larry] always be lying," and "Larry is the one who hide the body."

tions and, indeed, Williams' veracity, was entirely irrelevant to the guilt or innocence of the defendant. The relevant information was contained in the answers given by Estrella, which provided the factual basis necessary to establish the defendant's guilt.

With respect to the third category, Williams' assertive statements, we note that despite having contended in its brief to this court that the statements were offered only to provide context for Estrella's statements rather than for their truth, the state admitted at oral argument that some of the statements relevant to the commission of the crime were in fact hearsay and offered for their truth. For example, Williams, referring to the defendant by name, stated at one point "[Larry] always be lying" and "Larry is the one who hide the body." We agree that this category of Williams' statements were hearsay.

Whether Williams' assertive statements were testimonial, therefore, turns on an assessment of whether Williams would have a reasonable expectation that his words would be used in a subsequent prosecution. *State v. Slater*, supra, 285 Conn. 172–75. In this case, it is beyond dispute that Williams understood that the recording would be used in a subsequent prosecution. Indeed, in the hopes of receiving favorable treatment, he approached federal authorities specifically to obtain evidence they could use in subsequent prosecutions. He thus was aware that his words, along with Estrella's, were being recorded. The fact that Williams reasonably would have expected that the recording would be used in subsequent prosecutions compels our conclusion that his statements were testimonial and, because the defendant did not have the opportunity previously to cross-examine Williams about his statements, those statements were admitted in violation of the confronta-

tion clause.[25] Consequently, the defendant's claim regarding this category of statements meets the third prong of *Golding* because he has clearly established that a constitutional violation occurred.

Our analysis, however, does not end here. It is well established that a violation of the defendant's right to confront witnesses is subject to harmless error analysis; *State* v. *Merriam*, 264 Conn. 617, 649, 835 A.2d 895 (2003); and only if the error was not harmless may the defendant prevail on his *Golding* claim. *State* v. *Golding*, supra, 213 Conn. 240. The state bears the burden of proving that the error is harmless beyond a reasonable doubt. *State* v. *Merriam*, supra, 649. "Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless." (Internal quotation marks omitted.) Id.

In this case, the improper admission of Williams' statements constituted harmless error. The jury would have given little, if any weight, to Williams' statements, largely because there is no evidence that Williams had

_____

[25] The state never proved that Williams was unavailable. Whether that omission reasonably can be attributed to the fact that the defendant had not raised any claim as to Williams in the trial court or raised any claim as to the state's inability to demonstrate that Williams actually was unavailable is not dispositive in light of our determination that the improper admission of his testimonial statements was harmless.

any personal knowledge of the factual circumstances of the crime. Indeed, his statements appeared from the record to be little more than his own opinion or a repetition of what he previously had heard from another source. Moreover, even if the jury had assumed that Williams had such personal knowledge, the few statements that Williams asserted in the conversation were cumulative in that they were overshadowed by the wealth of detail offered by Estrella concerning the circumstances surrounding the victim's murder. For more than ten pages of the transcript, Estrella painted a highly detailed picture of the crime with little more from Williams than "mm-hmm." Estrella explained his reasons for murdering the victim and described the victim's cries, the process and technique behind the destruction of the body, Estrella's feelings as he and the defendant dismembered the body, where they obtained the supplies and what happened to them afterward, and a whole host of grisly details that provided overwhelming evidence of the role Estrella and the defendant had played in the victim's murder. In contrast, Williams made statements regarding the defendant along the lines of "Larry did it" and "Larry's the one who should be in jail," without offering anything of further substance. Indeed, Williams' statements were so incidental to the case overall that the defendant did not challenge their admission until after the trial had concluded and the case was appealed, and the state made no reference to the statements in its closing argument to the jury. We therefore conclude that Williams' statements were cumulative and therefore their admission was harmless. See *State* v. *Merriam*, supra, 264 Conn. 649; cf. *State* v. *Colton*, 227 Conn. 231, 254, 630 A.2d 577 (1993) (confrontation clause violation not harmless where improperly admitted testimony formed basis of jury's conviction and had it not been credited, jury would not have been able to convict), on appeal after remand, 234

Conn. 683, 663 A.2d 339 (1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 972, 133 L. Ed. 2d 892 (1996).[26] Accordingly, the defendant's claim fails to satisfy the fourth prong of *Golding*.

C

The defendant's final claim is that the trial court improperly admitted the recording of Estrella's statements in violation of § 8-6 (4) of the Connecticut Code of Evidence.[27] The state contends in response that the statements properly were admitted because they were reliable under the totality of the circumstances as a dual-inculpatory statement against penal interest. We conclude that the trial court did not abuse its discretion in finding that the statements were admissible as statements against penal interest.

Section 8-6 (4) allows a hearsay statement made by an unavailable declarant to be admitted as a statement against penal interest if the statement is " 'trustworthy' and, 'at the time of its making, so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true.' " *State* v. *Rivera*, supra, 268 Conn. 361; Conn. Code Evid. § 8-6 (4). The code provides in relevant part that "[i]n

---

[26] The defendant points to *State* v. *Hernandez*, 254 Conn. 659, 672, 759 A.2d 79 (2000), wherein the court stated that "[t]he issue is whether the confidential informant's testimony would be highly probative and important, if not critical, to his defense." This case is inapposite, as it dealt with the issue of whether the disclosure of the identity of a confidential informant would impact the defendant's ability to prepare a defense.

[27] As we previously have noted, the defendant also contends that Estrella's statements did not meet the requirements of the confrontation clause for nontestimonial statements pursuant to *Ohio* v. *Roberts*, supra, 448 U.S. 66. As we have noted in part II A of this opinion, the United States Supreme Court has held that the confrontation clause does not apply to nontestimonial statements. *Davis* v. *Washington*, supra, 547 U.S. 821. Because the defendant conceded that Estrella's statements were nontestimonial, we therefore limit our evaluation of the defendant's claim to the Connecticut Code of Evidence.

determining the trustworthiness of a statement against penal interest, the court shall consider (A) the time the statement was made and the person to whom the statement was made, (B) the existence of corroborating evidence in the case, and (C) the extent to which the statement was against the declarant's penal interest." Conn. Code Evid. § 8-6 (4). The trial court must consider all of the relevant factors and determine whether the statement presents sufficient indicia of reliability to justify its admission. *State* v. *Pierre*, 277 Conn. 42, 68, 890 A.2d 474, cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006), citing *State* v. *Schiappa*, 248 Conn. 132, 154, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999). "[W]hen viewing this issue through an evidentiary lens, we examine whether the trial court properly exercised its discretion." *State* v. *Pierre*, supra, 68.

In the present case, it is undisputed that Estrella properly invoked his fifth amendment right not to testify and thereby was rendered unavailable. Our examination of the relevant factors leads us to conclude that the trial court's findings adequately support its conclusion that Estrella's statements were squarely against his penal interest and presented sufficient indicia of reliability to justify their admission. The statements were made less than three months after the commission of the crime. As a general matter, confessions made closer in time to the commission of a crime tend to be more reliable than those made after sufficient time for reflection or revision has passed. *State* v. *Rivera*, supra, 268 Conn. 370; see also *State* v. *Gold*, 180 Conn. 619, 634, 431 A.2d 501 (confession made within three months of murders trustworthy), cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). Estrella spoke in a hushed tone when he recounted details of the crime, and, although the conversation occurred in a prison cell, the trial court found that it was made in a private

manner to a cellmate in whom Estrella would be likely to confide and was intended to be kept confidential. See *State* v. *Pierre*, supra, 277 Conn. 70 ("[a]lthough . . . relationship of trust between [the declarant and his friend] was not necessarily as strong as if [they] were blood relatives, the fact remains that they shared a friendship and a relationship of trust"); see also *State* v. *Rivera*, supra, 368–69 (statement made in private location with understanding that it should be kept confidential was trustworthy). Finally, the statements were squarely against Estrella's penal interests because they directly implicated him in an unsolved murder and included chilling detail. Compare *State* v. *Pierre*, supra, 68–69 (dual inculpatory statement in which declarant provided grisly details of both his own and accomplice's actions in murder deemed reliable because statement squarely implicated his own wrongdoing in crime). It is well established that the admission of a crime supports an inference of reliability because people do not tend to subject themselves to criminal prosecution lightly. *State* v. *Barton*, 219 Conn. 529, 551, 594 A.2d 917 (1991).

The defendant asserts that the circumstances surrounding Williams' elicitation of Estrella's statements made the statements unreliable. He contends that Williams was not a person in whom Estrella would naturally confide, and that Williams was motivated by a self-interested desire for leniency with respect to his own charges to induce Estrella to confess. He points to case law in which this court has deemed an informant's testimony suspect due to such motives. See *State* v. *Patterson*, 276 Conn. 452, 469, 886 A.2d 777 (2005) ("We agree with the defendant that an informant who has been promised a benefit by the state in return for his or her testimony has a powerful incentive, fueled by self-interest, to implicate falsely the accused. Conse-

quently, the testimony of such an informant, like that of an accomplice, is inevitably suspect."). We disagree.

Estrella knew Williams to be in a situation similar to his own—incarcerated and facing criminal charges—and made his statements to Williams in light of the camaraderie that arises under such shared circumstances. Moreover, this is not a situation in which the informant is reporting what a defendant or a codefendant stated or did, as in *Patterson*, the case cited by the defendant. See id., 459–60. Rather, the recording presents Estrella's own statements and the circumstances in which he gave them. Thus, the case law cited by the defendant is inapposite. Additionally, it is clear from the trial court's findings and the recording itself that Williams did not induce Estrella to share the details of the crime. Rather, Estrella chose to provide a highly detailed rendition of the crime with little prompting from Williams. For these reasons, we conclude that the trial court did not abuse its discretion when it admitted Estrella's statements under the statement against penal interest exception to the hearsay rule.

The judgment is affirmed.

In this opinion the other justices concurred.