STATE OF CONNECTICUT *v.* CHRISTOPHER BROWN
(AC 27602)

Flynn, C. J., and Bishop and Lavery, Js.

Argued September 18, 2008—officially released January 13, 2009

*Cameron R. Dorman*, special public defender, for the appellant (defendant).

*Melissa Patterson*, deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Roger S. Dobris*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Christopher Brown, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and carrying a pistol without a permit in violation of General Statutes § 29-35.[1] On appeal, the defendant claims that the trial court improperly violated his sixth amendment right of confrontation by allowing testimonial hearsay statements to be admitted.[2] We conclude that the defendant's sixth

---

[1] In a separate case that was consolidated with the charges at issue here, the defendant was charged with murder in violation of General Statutes § 53a-54a. The jury, however, did not reach a unanimous verdict on that charge, and the court declared a mistrial. The defendant accepted a plea agreement that included a guilty plea to the murder charge, and the court sentenced him to thirty years in prison for the murder, which was to run concurrently to a five year sentence for assault in the first degree and a one year sentence for carrying a pistol without a permit. The murder conviction is not at issue in this appeal.

[2] The defendant also claims that it was improper for the court to deny his motion for a mistrial. Because the first issue is dispositive of his appeal, we need not address this second issue.

amendment rights were violated and, accordingly, reverse the judgment of the conviction and remand the matter for a new trial.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. At approximately 7:30 a.m. on June 17, 2004, the defendant's brother (victim) was shot in his chest at or near his home. The victim's home was approximately seventy-five feet from the Hill Health Center in New Haven. After the victim was shot, he ran toward the health center, yelling that he had been shot. Staff at the health center helped the victim lie down outside on the curb and called 911. Officer Alan Turecheck of the New Haven police department arrived at the health center and called for fire, emergency and ambulance assistance. He approached the victim and asked for his name, date of birth and where he lived. The victim answered those questions. Turecheck then asked the victim who had shot him, but the victim responded that he needed a moment because he was in pain. Fire and ambulance personnel arrived and began treating the victim. The victim was then placed in the ambulance to transport him to a hospital emergency room, and Turecheck also got into the ambulance. Turecheck's stated purpose for going with the victim in the ambulance was to obtain a dying declaration. During the short ambulance ride to the emergency room, Turecheck again asked the victim who had shot him, to which he responded that his brother, the defendant, had shot him. When Turecheck asked the victim what the motive may have been, he answered that he had had an argument with the defendant but became evasive as to what the argument was about.

At trial, the victim refused to testify or state his name. Defense counsel filed a motion in limine to preclude the testimony of Turecheck regarding the victim's identification of the defendant as the shooter. After an offer

of proof, the court ruled that the verbal identification given to Turecheck was hearsay but that it fell within the excited utterance exception to the rule against hearsay.[3] The defendant was convicted of assault in the first degree and carrying a pistol without a permit. This appeal followed.

The defendant claims that the court improperly admitted the victim's hearsay statements to Turecheck and that these statements were testimonial hearsay that violated the defendant's confrontation rights under *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The state claims that the purpose of the statement was to resolve an ongoing emergency, rather than to collect information that would be relevant to a criminal prosecution. We agree with the defendant. We note at the outset that it is undisputed that the defendant properly preserved this issue for appellate review when he filed a relevant motion in limine and objected at trial.

In *State* v. *Slater*, 285 Conn. 162, 939 A.2d 1105, cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008), our Supreme Court recently examined *Crawford*. "Under *Crawford* v. *Washington*, supra, 541 U.S. 68, the hearsay statements of an unavailable witness that are testimonial in nature may be admitted under the sixth amendment's confrontation clause only if the defendant has had a prior opportunity to cross-examine the declarant. Hearsay statements that are nontestimonial in nature are not governed by the confrontation clause, and their admissibility is governed solely by the rules of evidence. *Davis* v. *Washington*, 547 U.S. 813,

---

[3] Because we determine that the victim's statements were testimonial in nature, we do not consider whether they properly were ruled spontaneous utterances. See *State* v. *Slater*, 285 Conn. 162, 939 A.2d 1105 (whether hearsay statement properly admitted as spontaneous utterance considered after statement held nontestimonial), cert. denied, 553 U.S. 1085, 128 S. Ct. 2885, 171 L. Ed. 2d 822 (2008).

823–24, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006). Thus, the threshold inquiry for purposes of the admissibility of such statements under the confrontation clause is whether they are testimonial in nature. Because this determination is a question of law, our review is plenary. . . .

"In *Crawford,* the Supreme Court declined to spell out a comprehensive definition of testimonial . . . . Instead, the court defined a testimonial statement in general terms: A solemn declaration or affirmation made for the purpose of establishing or proving some fact. . . . The court did note, however, three formulations of th[e] core class of testimonial statements . . . [1] ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially . . . [2] extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions . . . [and 3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Slater,* supra, 285 Conn. 169–70. "[I]n *Davis* v. *Washington,* supra, 547 U.S. 822, the United States Supreme Court elaborated on the third category and applied a 'primary purpose' test to distinguish testimonial from nontestimonial statements given to police officials, holding: 'Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances

objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'" *State* v. *Smith*, 289 Conn. 598, 623, 960 A.2d 993 (2008). Our Supreme Court reaffirmed this precedent by holding that whether a statement is testimonial in nature focuses "on the reasonable expectation of the declarant that, under the circumstances, his or her words later could be used for prosecutorial purposes." *State* v. *Slater*, supra, 172.

In the present case, the stated purpose for Turecheck's presence in the ambulance with the victim was so that he could obtain a dying declaration. This is precisely a situation that *Crawford*'s protections intend to remedy. Specifically, in telling Turecheck that his brother had shot him, the victim should have been under the reasonable expectation that this statement would later be used for his brother's prosecution. The victim was under no present threat of the defendant, as the victim had fled the scene of the shooting and was undergoing treatment for his injuries. He was in the presence of emergency medical staff and a police officer when he made this statement. Further, Turecheck's additional questioning that sought a motive for the crime indicates that his intent was to seek information for a future prosecution. The interaction between Turecheck and the victim clearly was investigatory, and the answers to Turecheck's questions were testimonial statements. Because the victim refused to testify in this case, the defendant had no opportunity to cross-examine him on these statements. The court improperly allowed Turecheck to testify in this case about the victim's statements to him.

"It is well established that a violation of the defendant's right to confront witnesses is subject to harmless error analysis . . . . The state bears the burden of proving that the error is harmless beyond a reasonable

doubt." (Citations omitted.) *State* v. *Smith*, supra, 289 Conn. 628. The state does not argue in its brief, however, that the admission of the statements to Turecheck, in violation of the defendant's confrontation clause rights, constituted harmless error beyond a reasonable doubt, and, accordingly, on the basis of the foregoing, we cannot conclude that it was harmless. See *State* v. *Kirby*, 280 Conn. 361, 387, 908 A.2d 506 (2006).

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.